Jerald GILLESPIE, Plaintiff,

v.

**CITY OF INDIANAPOLIS, City of Indianapolis Police Department and Michael H. Zunk, Defendants.**

**No. IP 98–0266–C B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 5, 1998.

William J. Friedman, Sante Fe, NM, John C. Ruckelshaus, Ruckelshaus Roland Kautzman & Hasbrook, Indianapolis, IN, for plaintiff.

Marsha C. Massey, Asst. U.S. Atty., Indianapolis, IN, Dale R. Simmons, Assistant Corp. Counsel, City–County Legal Div., Indianapolis, IN, for defendant.

***ENTRY DENYING PLAINTIFF'S MOTION TO STRIKE, GRANTING DEFENDANTS' MOTION TO DISMISS, GRANTING THE UNITED STATES' MOTION TO DISMISS AND DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION***

BARKER, Chief Judge.

This matter comes before the Court on Plaintiff's motion strike the United States' motion to dismiss and its jurisdictional arguments on standing and ripeness, Defendants' motion to dismiss, the United States' motion to dismiss and Plaintiff's motion for preliminary injunction. For the reasons set forth below, we *deny* Plaintiff's motion to strike, *grant* Defendants' motion to dismiss, *grant* the United States' motion to dismiss and *deny as moot* Plaintiff's motion for preliminary injunction. In addition, Plaintiff requests oral argument on his preliminary injunction motion and the Defendants' and the United States' motions to dismiss. However, the Court finds the parties' briefing sufficient for determination of this matter and oral argument unnecessary, and accordingly *deny* Plaintiff's request for oral argument.

### STATEMENT OF MATERIAL FACTS

In September of 1996, Congress passed certain amendments (the "Lautenberg Amendment") to the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.*, adding a firearms disability for "any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence." *See* 18 U.S.C. § 922(g)(9). Unlike every other federal firearms disability under § 922(g), the Lautenberg Amendment applies to law enforcement officers, for Congress specifically excluded domestic violence misdemeanants from the general exemption for federal and state agencies from § 922(g) firearms disabilities. *See* 18 U.S.C. § 925(a)(1).

Plaintiff, Jerald Gillespie ("Gillespie"), brought this suit against Defendants, the City of Indianapolis (the "City"), the City of Indianapolis Police Department and Michael H. Zunk, Chief of Police, challenging the constitutionality of the Lautenberg Amendment. *See* Compl. The United States has intervened in this action pursuant to 28 U.S.C. § 2403(a). Gillespie is a police officer employed by the Indianapolis Police Department and has been a full-time law enforcement officer since 1971. *See* Compl. ¶¶ 5, 8. In October 1995, Gillespie pled guilty to a misdemeanor battery offense involving domestic violence against his ex-wife. *See* Compl. ¶ 7; Defs.Exh. A. The Indianapolis Police Department proposes to terminate Gil-

lespie based on application of the Lautenberg Amendment, which criminalizes possession of a firearm by domestic violence offenders; under Indianapolis Police Department policy, every police officer must be trained and equipped to use and possess a firearm. *See* Compl. ¶¶ 6, 25. Gillespie filed suit and moved for preliminary injunctive relief barring his termination of employment, and Defendants, as well as the United States as intervenor, moved to dismiss his complaint. We will first address Gillespie's motion to strike and the City's and the United States' motions to dismiss and then turn to Gillespie's motion for preliminary injunction.

### STANDARD OF REVIEW

■ On a motion to dismiss pursuant to Rule 12(b)(6), we must determine whether the plaintiff's complaint states a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). The Court must examine the sufficiency of the plaintiff's complaint, not the merits of his lawsuit. *See Triad Assocs. v. Chicago Housing Auth.*, 892 F.2d 583, 585 (7th Cir.1989). "Accordingly, the motion should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir.1993) (citation omitted); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Jones v. General Elec. Co.*, 87 F.3d 209, 211 (7th Cir.1996). When reviewing a motion to dismiss, we accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Dawson v. General Motors Corp.*, 977 F.2d 369, 373 (7th Cir.1992).

### DISCUSSION

*Scope of the Government's Intervention*

■ The United States, which is not a party to this action, moved the Court to allow the Government to intervene as a matter of right, pursuant to 28 U.S.C. § 2403(a), which provides:

In any action, suit or proceeding in a court of the United States to which the United States ... is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court ... shall permit the United States to intervene for presentation of evidence ... and for argument on the question of constitutionality. The United States shall ... have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

28 U.S.C. § 2403(a). Gillespie objected to the United States' motion, requesting the Court to limit the scope of the intervention. In an order dated April 17, 1998, we granted the United States' motion to intervene as a matter of right and reserved the issue regarding the permissible scope of the intervention until later. In addition to his objection to the United States' motion to intervene, Gillespie moves to strike the United States' motion to dismiss and its jurisdictional arguments on standing and ripeness on the same grounds.

Gillespie argues that the statutory language of § 2403(a) specifically circumscribes the matters that the United States as intervenor may argue, in particular asserting that the United States may not challenge Gillespie's standing to bring suit and ripeness. *See* Plaint.Resp. to Govt.Mot.Interv. at 3. The United States responds that § 2403(a) is silent regarding whether its rights as an intervenor include the right to raise jurisdictional challenges and contends that the Court should not prevent the United States from addressing jurisdictional defects because it is "well-settled" that courts "should not reach constitutional questions if their decision[s] can be reasonably avoided." *See* Govt. Resp./Mot.Br. at 6 (quoting *Evans v. Newton*, 382 U.S. 296, 315–316, 86 S.Ct. 486, 497, 15 L.Ed.2d 373 (1966)) (Harlan, J., dissenting); *see also Peters v. Hobby*, 349 U.S. 331, 338, 75 S.Ct. 790, 794, 99 L.Ed. 1129 (1955).

We have found no case law specifically addressing the issue of whether the United States as an intervenor under § 2403(a) may

challenge the jurisdiction of the Court. The case law relied upon by Gillespie primarily asserts that the intervention is "limited" to presenting evidence and arguing constitutionality, parroting the words of the statute without providing much interpretation. See *Yniguez v. State of Arizona*, 939 F.2d 727, 739–740 (9th Cir.1991) (government intervenor only had "limited right," not a party as to appeal); *Vietnamese Fishermen's Assoc. v. Knights of Ku Klux Klan*, 543 F.Supp. 198, 215 (S.D.Tex.1982); *Smolowe v. Delendo Corp.*, 36 F.Supp. 790, 792 (S.D.N.Y.1940). However, § 2403(a) also states that a government intervenor has "all the rights of a party ... to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality." 18 U.S.C. § 2403(a). This language suggests to us that the United States may argue issues of standing and ripeness as well as file a motion to dismiss as proper exercises of its right to present its constitutional arguments fully.

In addition, we recognize our independent obligation to determine subject matter jurisdiction as to each case before us, regardless of the parties' arguments or waivers, pursuant to our responsibilities under Article III (see 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3522 at 69–72 (2d ed.1984) (collecting cases); *United States v. Tribal Development Corp.*, 49 F.3d 1208, 1216 (7th Cir.1994) (court's authority to act under Article III carries with it a corresponding duty to monitor its jurisdiction)), which obligation is more acute when addressing constitutional challenges (see *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541–542, 106 S.Ct. 1326, 1331 & 1334, 89 L.Ed.2d 501 (1986)). This continuing, nonwaivable requirement of subject matter jurisdiction is codified in Federal Rule of Civil Procedure 12(h)(3), which states:

> Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

Fed.R.Civ.P. 12(h)(3).

In light of the right granted to government intervenors under § 2403(a) to present constitutional arguments and the Court's obligation to determine independently whether it has proper authority over the instant case, we will consider the United States' arguments as to standing and ripeness as well as its motion to dismiss. Even if the motion to dismiss is not a proper exercise of the United States' rights as an intervenor under § 2403(a), we construe the motion to dismiss as the United States' argument in support of the constitutionality of § 922(g). Accordingly, we *overrule* Gillespie's objection to the scope of the United States' intervention and *deny* Gillespie's motion to strike the United States' motion to dismiss and argument on standing.

### Municipal Defendants

■ Gillespie named the City of Indianapolis, the City of Indianapolis Police Department and Michael H. Zunk, Chief of Police, as defendants to this action. See Compl. As noted by Defendants in their motion to dismiss, the Indianapolis Police Department is a municipal department not separately suable from the City and Gillespie's suing Defendant Zunk in his official capacity is merely another way to sue the City. See Defs.Mot.Br. at 2 (citing *Jones v. Bowman*, 694 F.Supp. 538, 544 (N.D.Ind. 1988); *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Thus, the only viable defendant to this action is the City. See *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir.1987). Accordingly, we *grant* Defendants' motion to dismiss Gillespie's complaint as to the Indianapolis Police Department and Michael Zunk.

### Standing and Ripeness

■ The United States moves to dismiss Gillespie's complaint for lack of subject matter jurisdiction, asserting that Gillespie does not have standing to bring his claims and that his claims are not ripe for adjudication. See Govt.Mot.Br. at 8. The United States contends that (1) Gillespie has not established a genuine threat of criminal prosecution under § 922(g)(9), (2) pre-enforcement judicial review of criminal laws is disfavored, (3) Gillespie's injury is not imminent but rather highly speculative and (4) his potential termination from the Indianapolis police force is not fairly traceable to the Lauten-

berg Amendment. *See* Govt.Mot.Br. at 8–13.[1] In response to the Government's challenge to his standing, Gillespie maintains that his injury is derived from his imminent termination from employment as a police officer, not any threat of federal criminal enforcement, and that the United States' pre-enforcement argument is misplaced. *See* Plaint.Resp.Br. at 3. Gillespie asserts further that the reasoning in similar cases where federal courts found standing to challenge the 1996 amendments to the Gun Control Act should apply, arguing that his injury is:

> fairly traceable to the federal enactment because "local and state law enforcement agencies do not have unfettered choices or legitimate discretion to flout a federal statute by hiring, or continuing to employ, officers whose possession of firearms is a crime."

Plaint.Resp.Br. at 3–4 (quoting *Fraternal Order of Police v. United States*, 981 F.Supp. 1, 3 (D.D.C.1997)).

 The Court's judicial power under Article III is limited to the adjudication of "cases" and "controversies":

> The constitutional limitations upon our jurisdiction under the "case or controversy" requirement of Article III are now well settled: At an irreducible minimum, Art. III requires a party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant and that the injury "fairly can be traced to the challenged action" and is likely to be redressed by a favorable decision.

*Lindley for Lindley v. Sullivan*, 889 F.2d 124, 128 n. 3 (7th Cir.1989) (citations omitted). Thus, the first thing we must determine is whether Gillespie has suffered some actual or threatened injury. An "injury in fact" consists of "an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

In his complaint, Gillespie alleges that "Defendants propose to terminate Plaintiff on April 15, 1998 based on their application of the 1996 Gun Control Act amendments." Compl. ¶ 6.[2] Gillespie asserts further that he "has been subjected to altered conditions of employment as well as job qualification criteria as a result of the enforcement of the GCA amendments" (Compl.¶ 26) and that he:

> has been directly and negatively impacted by the application of the GCA amendments since December 30, 1997 when he was informed that defendant Zunk had determined that Plaintiff "should be discharged from the Indianapolis Police Department."

Compl. ¶ 58. The City concedes that Michael Zunk recommended that Gillespie be terminated, at which point the decision was referred to the Merit Board for a *de novo* administrative hearing, and that Gillespie has been suspended without pay pending the decision of the Merit Board. *See* Defs.Mot.Br. at 4. We find that these facts support a finding that Gillespie's injury is sufficiently concrete and imminent for purposes of standing.

In addition, although the United States contends that the likelihood of Gillespie's final termination is "highly speculative" (*see* Govt.Mot.Br. at 11), we determine that the outcome is in fact highly predictable, for we recognize that a firearms disability operates as virtually a total bar to employment as a police officer. Specifically, we understand that the Indianapolis Police Department requires all police officers to qualify for fire-

---

1. The City does not dispute Gillespie's standing to challenge § 922(g)(9), acknowledging that the adverse employment action taken against Gillespie creates an actual injury. *See* Defs.Mot.Br. at 6. Instead, the City argues that Gillespie does not have standing to challenge § 922(s)(2), which provision relates to the obligation of chief law enforcement officers to determine the eligibility of persons to purchase handguns. *See* Defs.Mot. Br. at 6–7. However, as § 922(s)(2) was invalidated in *Printz v. United States*, 521 U.S. 98, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), Gillespie cannot assert a claim as to this provision and accordingly we do not address the City's standing argument. *See Printz*, 521 U.S. ——, 117 S.Ct. at 2383–2384.

2. As a part of the pretrial proceedings in this litigation, a postponement of this deadline was agreed to by the parties pending our ruling on the pending motions.

arms proficiency and, as a logical extension, firearms use. *See* Plaint.Prelim.Inj.Br., Attach. 1. Further, we agree with the district court in the *Fraternal Order of Police* decision that state and local police departments have no discretion to disregard a federal criminal statute, and thus we find that Gillespie is likely to be terminated as a city police officer, if this statute is applied as to him. *See Fraternal Order of Police*, 981 F.Supp. at 3.

The Indianapolis Police Department's lack of authority to ignore federal law in hiring police officers also supports our finding that Gillespie's injury is "fairly traceable" to the Lautenberg Amendment. In order to satisfy standing requirements, Gillespie's injury must be "fairly traceable" to the Lautenberg Amendment and "not an injury that results from the independent action of some third party...." *See Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). The United States argues that the Lautenberg Amendment does not set the qualifications for local and state police officers but only proscribes firearms possession. *See* Govt. Mot.Br. at 12. The United States contends that state and local police departments, including the Indianapolis Police Department, "remain free to determine what qualifications their law enforcement officers must possess." *See* Govt.Mot.Br. at 12. While the United States' contention may be true, it is not dispositive on the issue of whether the injury here is "fairly traceable" to the statute. Indeed, the City concedes that Gillespie would be fired based solely upon the firearms restriction set forth in the Lautenberg Amendment. *See* Defs.Mot.Br. at 4. Thus, we find that any decision by the Indianapolis Police Department to fire Gillespie, while not mandated by § 922(g)(9), nevertheless stems from the federal statute and not the exercise of independent discretion.

We also find that Gillespie's injury is likely to be remedied by a favorable decision in this case, as the City seeks to fire him based solely on the application of § 922(g)(9), and without such disability the City would likely maintain his employment. Therefore, because we find that Gillespie has established sufficiently that he has an "injury-in-fact," that his injury is "fairly traceable" to the Lautenberg Amendment and that a decision holding the amendment unconstitutional likely would prevent Gillespie's termination, we hold that Gillespie has standing to bring this constitutional challenge to the Lautenberg Amendment.

 The United States also challenges the ripeness of Gillespie's case for adjudication, asserting that "there are many uncertainties and contingencies which prevent plaintiff's case from presenting a ripe controversy." Govt.Mot.Br. at 14. "Ripeness is a doctrine which courts use to enforce prudential limitations upon their jurisdiction." *Peick v. Pension Benefit Guaranty Corp.*, 724 F.2d 1247, 1261 (7th Cir.1983). The Court must consider the following factors in assessing whether a case is ripe for judicial review: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Peick*, 724 F.2d at 1261.

The United States contends that Gillespie's case is not ripe for adjudication because there has been no final decision as to Gillespie's employment status, arguing specifically that the police department has not determined whether the Lautenberg Amendment applies to Gillespie. *See* Govt.Mot.Br. at 15. Despite the United States' arguments, we find that this case is fit for judicial review because the issues presented involve purely legal questions—a facial constitutional attack upon the validity of a federal statute—and "would not be clarified by any further administrative proceedings or any other factual development." *See Triple G Landfills v. Board of Comm'rs*, 977 F.2d 287, 289 (1992).

In his complaint, Gillespie admits that he was convicted of a Class A misdemeanor for battery (*see* Compl. ¶ 7) and does not appear to dispute that the Lautenberg Amendment applies to him.[3] In addition, the United

---

3. The United States mistakenly asserts that Gillespie disputes the amendment's application as to him, arguing that Gillespie contends he did not commit a misdemeanor crime of domestic vio-

States filed with the Court the order of conviction for Gillespie's misdemeanor offense in 1995, and the facts set forth in the order show that Gillespie pled guilty to a Class A misdemeanor battery against his ex-wife, Margaret Gillespie, which offense falls squarely within the definition of "misdemeanor crime of domestic violence" under § 922(g)(9).[4] *See* Govt.Mot.Br., Exh. A. Thus, there is no factual dispute that § 922(g)(9) operates as a firearms disability for Gillespie. Furthermore, although Gillespie has not been terminated finally by decision of the Merit Board, the Merit Board's decision will not impact the issues in dispute here—the constitutional validity of the Lautenberg Amendment—for no further factual development is needed for the Court to address Gillespie's claims. The hardship to Gillespie of delaying judicial review also weighs in favor of a finding of the ripeness as to the dispute, for he will be fired from the police force on the basis of the firearms disability. We hold as well that "there is no countervailing benefit—either to the judicial process or the public interest—that would attend such a postponement." *Triple G,* 977 F.2d at 290. Thus, for the reasons ascribed above, we find that the matter is ripe for review, and we will address now the merits of Gillespie's claims.

### Count I: Tenth Amendment Challenge

■■■ Gillespie argues in Count I of his complaint that Congress' enactment of § 922(g)(9) and the other provisions of the Lautenberg Amendment invades state sovereignty in violation of the Tenth Amendment. *See* Compl. ¶¶ 59–83. Gillespie contends that the Lautenberg Amendment violates the principles outlined in Supreme Court cases such as *New York v. United States,* 505 U.S.

144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) and *Printz v. United States,* 521 U.S. 98, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) by (1) effectively supplanting state criminal law by defining the crime of domestic violence and establishing substantive penalties for such offense, (2) effectively supplanting state civil law by dictating qualifications of state and local law enforcement officials and (3) "impos[ing] a duty on States to serve as 'implements of regulation.'" *See* Plaint.Prelim.Inj.Br. at 9–11, 16.

In response to Gillespie's assertion that the Lautenberg Amendment usurps the states' legislative power in the area of criminal law, the City cites *United States v. Westbrook,* 125 F.3d 996, 1010 (7th Cir.1997), in which the Seventh Circuit addressed a Tenth Amendment challenge to federal crack cocaine laws. The criminal defendant, Westbrook, argued that such federal regulation invaded the states' traditional police powers. The Court upheld the statute, stating, "Congress may regulate conduct that a state may also regulate." *See also United States v. Miller,* 307 U.S. 174, 178, 59 S.Ct. 816, 818, 83 L.Ed. 1206 (1939) (holding that argument that federal tax or narcotics regulation usurps states' police power is "plainly untenable").

In any event, we find that the statute at issue here does not create or amend state law, but rather enacts a new federal law, for states remain free to define and punish domestic violence crimes as they wish; however, the federal government imposes a federal firearms disability in addition to any action taken or not taken by the states. The definition of domestic violence within the Gun Control Act of 1968 applies only to that Act and

---

lence, citing ¶ 7 of the Complaint. *See* Govt. Mot.Br. at 14–15. However, in the cited paragraph, Gillespie states, "Plaintiff pled guilty in October 1995 to a Class A Misdemeanor which is not a domestic violence offense under state law." Compl. ¶ 7. One of Gillespie's claims is that Congress improperly invaded the State of Indiana's right to determine the substantive definition of domestic violence and the punishments meted out for such offense (*see* Plaint.Prelim.Inj.Br. at 9), and the cited paragraph merely serves to assert and preserve these arguments. The United States presents no other evidence that Gillespie disputes the amendment's application.

4. Section 921(a)(33)(A), which defines "misdemeanor crime of domestic violence" for purposes of § 922(g)(9), provides in relevant part:

The term "misdemeanor crime of domestic violence" means an offense that—
 (i) is a misdemeanor under Federal or State law; and
 (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim....

any other federal statutes choosing to incorporate it, and the only substantive "punishment" added to the state offense is the federal firearms disability, which does not affect the states' sentencing decisions as to the domestic violence offense. Thus, we find Gillespie's argument that the Lautenberg Amendment is "compelled state legislation" unpersuasive.

Similarly, we find that the statute does not speak to the qualifications of state officials because the statute regulates only private behavior. While it is true that, on the basis of the federal firearms disability imposed under § 922(g)(9), state and local law enforcement agencies are unlikely to continue employing domestic violence offenders or hire such persons in the future, these agencies are not "compelled" to change their employment qualifications by the statute. Such agencies may reassign officers to different divisions or "desk jobs," create special non-firearm units that use other weapons like nightsticks or remain unarmed, or even change the firearms requirement for on-duty officers. Despite the fact that such agencies are most likely to discontinue the employment of domestic violence offenders rather than adjust the firearms requirement or accommodate those affected by the new disability, such outcome is not mandated by the statute, and the ancillary effect of the firearms disability on the employment of state and local law enforcement officers does not violate state sovereignty under the Tenth Amendment.

We will consider next Gillespie's claim that the Lautenberg Amendment forces states to administer and enforce a federal regulatory program. The Seventh Circuit in *United States v. Kenney*, 91 F.3d 884, 891 (7th Cir. 1996) rejected a similar Tenth Amendment challenge to another federal firearms disability under the Gun Control Act of 1968, § 922(o), which statute prohibits possession of machine guns. The *Kenney* court asserted that "Congress may not simply commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." *Kenney*, 91 F.3d at 891 (quoting *New York*, 505 U.S. at 156–157, 112 S.Ct. at 2417–2418).

The Seventh Circuit recognized that the Tenth Amendment acts as a restraint upon Congress' authority, limiting the federal government to its enumerated powers as well as restricting the manner in which Congress exercises those powers, concluding:

> Because § 922(o) was a proper exercise of Congress's enumerated authority under the Commerce Clause, and because it does not compel, let alone commandeer, the states to do anything, the statute does not violate the Tenth Amendment.

*Kenney*, 91 F.3d at 891. Thus, in order to survive a Tenth Amendment challenge, § 922(g)(9) must fall within one of Congress' enumerated powers and the manner in which Congress enacts the statute must not invade state sovereignty. As discussed below, we find that the firearms disability in § 922(g)(9) is a proper exercise of Congress' Commerce Clause power, so we need only determine whether the manner in which Congress has created the firearm disability "compels the states to do anything."

The City and the United States both contend that § 922(g)(9) is a constitutional exercise of congressional power that does not violate the Tenth Amendment. The United States argues that Gillespie's reliance upon *New York* and *Printz* is misplaced, for in those decisions, the Supreme Court invalidated statutes that required action on the part of the states, while the Lautenberg Amendment "places no requirement on States or state officials." *See* Govt.Mot.Br. at 19–20 (quoting *Fraternal Order of Police*, 981 F.Supp. at 6). In *New York*, the challenged statute provided that the states' failure to regulate the disposal of radioactive waste according to congressional standards required the states to take title to the waste and assume responsibility for its disposal. As the burden of regulation fell directly upon the states, the Court found that the statute constituted an impermissible coercion of state governments. *See New York*, 505 U.S. at 174–177, 112 S.Ct. at 2427–2429.

In *Printz*, the Court struck down certain sections of § 922(s) of the Gun Control Act of 1968 because the statute forced the states to take action by commanding the chief law enforcement officers of state and local law

enforcement agencies to make "reasonable efforts" to conduct background checks on prospective gun buyers. *See Printz,* 521 U.S. ——, 117 S.Ct. at 2383–2384, 138 L.Ed.2d 914. The Court held that Congress cannot force state officers to administer or enforce federal law. *See Printz,* 521 U.S. ——, 117 S.Ct. at 2381, 138 L.Ed.2d 914. In contrast, we find that § 922(g)(9) does not force the states to take any such action. Unlike the statutes struck down in *New York* and *Printz,* § 922(g)(9) regulates the behavior of private individuals, not states, for individuals will be prosecuted for violation of the statute and there is no federal mandate for states to assist in regulation and enforcement.[5]

Gillespie also raises an intriguing, albeit unsupported, argument regarding the exclusion of misdemeanor domestic violence offenders from the general exemption for law enforcement and other federal and state agents from federal firearms disabilities under the Gun Control Act of 1968. *See* 18 U.S.C. § 925(a)(1). Gillespie contends that Congress previously provided the exemption for state and local police officers in recognition of state sovereignty, particularly, the states' police powers, and that Congress' subsequent denial of this exemption as to § 922(g)(9) constitutes an impermissible invasion of the states' police power and thus violates the Tenth Amendment. *See* Plaint. Resp. Br. at 12. Gillespie provides no case law, legislative history or other support for this bare contention, and the Court has been unable to locate any authority on point.

We recognize some appeal in this argument, understanding that Congress does not create exemptions to its laws arbitrarily and without good reason and perhaps only acts in such a way when it feels forced to, whether out of political pressure or constitutional dic-

tates. Nevertheless, we cannot create legislative intent out of whole cloth, and while the exemption for state and federal agencies likely stems from more than mere deference to state interests, we are not free to speculate as to congressional intent. In any event, legislative intent would not be controlling, as Congress' belief regarding the constitutional limits of its own powers is not dispositive as to those limits. Having already determined that § 922(g)(9) does not unconstitutionally invade state sovereignty as protected by the Tenth Amendment, we reject Gillespie's argument. Therefore, because we find that the statute does not compel the states to administer or enforce a federal regulatory program, we *grant* the City's and the United States' motions to dismiss Gillespie's claims under the Tenth Amendment.

*Count II: Commerce Clause Challenge*

 Gillespie asserts that the Lautenberg Amendment exceeds Congress' power to regulate interstate commerce under the Commerce Clause. *See* Plaint.Prelim.Inj.Br. at 21. The Commerce Clause provides in relevant part: "The Congress shall have Power ... To regulate Commerce with foreign Nations and among the several States...." U.S. Const. art. I, § 8, cl. 3. Gillespie contends that the Lautenberg Amendment does not contain a sufficient connection to interstate commerce, particularly as applied to a police officer like Gillespie, who has possessed firearms intrastate in the *public interest without incident for over 25* years, according to Gillespie.[6] *See* Plaint.Prelim.Inj.Br. at 24. Gillespie relies upon *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), in which the Supreme Court held unconstitutional the "Gun Control Free School Zone Act," 18 U.S.C. § 922(q). In *Lopez,* the

---

**5.** Gillespie argues that § 922(g)(9) does not regulate private behavior but rather directs the actions of state officials in "prohibiting them from discharging their official duties upon threat of punishment." Plaint.Resp.Br. at 8. However, the statute at issue does not regulate such law enforcement personnel as state officials, but only as private citizens.

**6.** We note that any argument that the statute is unconstitutional "as applied" to Gillespie exceeds the Court's authority. Such a claim is not

ripe for review because it requires further factual development not alleged in Gillespie's complaint, such as the origin of Gillespie's service firearm and whether it has moved in interstate commerce. *See United States v. Lewis,* 100 F.3d 49, 51–52 (7th Cir.1996). Thus, we find that the facts relevant to such inquiry are not sufficiently concrete for judicial review and any claim that the statute is unconstitutional as applied is hereby dismissed.

Court held that mere possession of a firearm as prohibited in § 922(q), without an express jurisdictional nexus to interstate commerce, is not an economic activity that substantially affects interstate commerce. *See Lopez*, 514 U.S. at 561, 567–568, 115 S.Ct. at 1631, 1634.

The City and the United States both move to dismiss Gillespie's Commerce Clause claim, asserting that § 922(g)(9) contains an express jurisdictional requirement that § 922(q) lacked, which requires the prosecution to prove that the firearm in question was shipped or transported "in interstate or foreign commerce" or was possessed "in or affecting commerce," (18 U.S.C. § 922(g)). *See* Defs.Mot.Br. at 8–9; Govt.Mot.Br. at 17–18. As the City and the United States correctly attest, Section 922(g)'s jurisdictional nexus has been held sufficient to defeat a Commerce Clause challenge by every federal circuit court to decide the issue, including the Seventh Circuit. *See United States v. Lewis*, 100 F.3d 49, 51–53 (7th Cir.1996); *United States v. Bradford*, 78 F.3d 1216, 1222–1223 (7th Cir.1996); *United States v. Lee*, 72 F.3d 55, 58–59 (7th Cir.1995).[7] In light of the overwhelming weight of precedent, we find that § 922(g)(9) is a proper exercise of Congress' power under the Commerce Clause, and we *grant* the City's and the United States' motions to dismiss as to Count II of Gillespie's complaint.

### Count III: Fifth Amendment Challenge— Equal Protection

■ In Count III of his complaint, Gillespie asserts that § 922(g)(9) violates the Fifth Amendment's equal protection guarantee.[8] *See* Compl. ¶¶ 99–114; Plaint.Prelim.Inj.Br. at 27. In order to survive an equal protection challenge, a statutory classification must pass "rational basis" review unless it invades a fundamental constitutional right or is based upon "suspect" criteria, such as race. *See Harris v. McRae*, 448 U.S. 297, 322, 100 S.Ct.

2671, 2691, 65 L.Ed.2d 784 (1980); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). Gillespie concedes that law enforcement officers are not a suspect class (*see* Plaint.Prelim.Inj.Br. at 28) but contends that the Lautenberg Amendment impinges upon his fundamental right to bear arms under the Second Amendment as well as his interest in his employment with the Indianapolis Police Department (*see* Plaint.Prelim.Inj.Br. at 28–29). The City and the United States move to dismiss Gillespie's equal protection claim, asserting that § 922(g)(9) does not infringe any fundamental rights and is rationally related to the legitimate government purpose of keeping firearms away from potentially dangerous persons, specifically, those convicted of domestic violence offenses. *See* Defs. Mot.Br. at 19; Govt.Mot.Br. at 26.

■ If a fundamental right is impinged by an act of Congress, the enactment must be narrowly tailored to serve a compelling governmental interest. *See, e.g., Reno v. Flores*, 507 U.S. 292, 301–302, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993); *Plyler v. Doe*, 457 U.S. 202, 216–217, 102 S.Ct. 2382, 2394–2395, 72 L.Ed.2d 786 (1982). However, if no fundamental right is implicated, a statutory classification is presumed valid and will be upheld provided it is "rationally related to achievement of a legitimate governmental interest" (*Western & Southern Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 657, 101 S.Ct. 2070, 2077, 68 L.Ed.2d 514 (1981)), such that there is a "reasonably conceivable state of facts that could provide a rational basis for the classification" (*FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993)).

■ Gillespie contends that the Lautenberg Amendment "create[s] a clear depriva-

---

7. *See also United States v. Wells*, 98 F.3d 808, 811 (4th Cir.1996); *United States v. Barry*, 98 F.3d 373, 378 (8th Cir.1996); *United States v. Garcia*, 94 F.3d 57, 64 (2d Cir.1996); *United States v. Nguyen*, 88 F.3d 812, 820–821 (9th Cir.1996); *United States v. Rawls*, 85 F.3d 240, 242 (5th Cir.1996); *United States v. Gateward*, 84 F.3d 670, 672 (3rd Cir.1996); *United States v. Turner*, 77 F.3d 887, 889 (6th Cir.1996); *United States v. McAllister*, 77 F.3d 387, 389 (11th Cir.

1996); *United States v. Bennett*, 75 F.3d 40, 48–49 (1st Cir.1996); *United States v. Bolton*, 68 F.3d 396, 400 (10th Cir.1995).

8. Gillespie asserts also that the Lautenberg Amendment violates the Equal Protection Clause of the Fourteenth Amendment, but as this clause applies only to state action, not federal, we will address only Gillespie's Fifth Amendment claims.

tion of a fundamental right to bear arms." Plaint.Prelim.Inj.Br. at 29. As the enactments impinge a fundamental right, Gillespie argues, they should be scrutinized under a compelling governmental interest standard. *See* Plaint.Prelim.Inj.Br. at 29. The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

Relying upon such cases as *United States v. Miller,* 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939) and *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the City contends that the Second Amendment is not a fundamental right for equal protection purposes. *See* Defs.Mot.Br. at 17; *see also* Govt.Mot.Br. at 24–25 (arguing that right to bear arms is not a fundamental right). In *Miller,* the Supreme Court's most recent interpretation of the Second Amendment, the Court reviewed a district court decision invalidating part of the National Firearms Act of 1934 on Second Amendment grounds. The plaintiff, Miller, was indicted for transporting a sawed-off shotgun that had not been registered pursuant to the Act. The Court reversed the lower court, holding:

> In the absence of any evidence tending to show that possession or use of a "shotgun having a barrel of less than eighteen inches in length" at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense.

*Miller,* 307 U.S. at 178, 59 S.Ct. at 818.

The Supreme Court in *Lewis* rejected an equal protection challenge to federal legislation forbidding felons from possessing firearms similar to Gillespie's claim, asserting, "These legislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties." *Lewis,* 445 U.S. at 65 n. 8, 100 S.Ct. at 921 n. 8 (citing *Miller*). The *Lewis* Court continued:

> This Court has recognized repeatedly that a legislature constitutionally may prohibit a convicted felon from engaging in activities far more fundamental than the possession of a firearm.

*Lewis,* 445 U.S. at 66, 100 S.Ct. at 921. On the weight of the *Miller* and *Lewis* decisions, we conclude that the right to bear arms guaranteed by the Second Amendment is not a fundamental right for equal protection purposes.[9] *See also Sklar v. Byrne,* 727 F.2d 633, 637 (7th Cir.1984) ("the second amendment does not require us to apply the compelling governmental interest standard").

Gillespie also contends that strict scrutiny is required because the statute "essentially deprives law enforcement personnel of their property interest in their employment where receipt and possession of a government issued firearm is usually mandatory," contending that such employment interest is a fundamental right. Plaint.Prelim.Inj.Br. at 29. However, the Supreme Court held that "there is no fundamental right to government employment for purposes of the Equal Protection Clause." *United Bldg. and Constr. Trades Council of Camden v. Mayor of Camden,* 465 U.S. 208, 219, 104 S.Ct. 1020, 1028, 79 L.Ed.2d 249 (1984) (citing *Massachusetts Bd. of Retirement,* 427 U.S. at 313, 96 S.Ct. at 2566); *see also Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979) ("public employment is not a constitutional right"); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161–1162, 25 L.Ed.2d 491 (1970) (rational basis standard applies to "legislation restricting the availability of employment opportunities"). Thus, we conclude that Gillespie has no fundamental right to his employment as an Indianapolis

---

9. Even if we determined that the right to bear arms is a fundamental right for equal protection purposes, see the Court's analysis of § 922(g)(9) under strict scrutiny in the discussion of Gillespie's Second Amendment claim, *infra.*

police officer. Having found that there is no fundamental right to possess firearms or to public employment, we will examine Gillespie's equal protection claims under a "rational basis" standard.

First, Gillespie maintains that the statute irrationally singles out offenders convicted of domestic violence misdemeanors "out of the pantheon of violent misdemeanors" for a firearms disability, giving preferential treatment to every other type of misdemeanant, including those with multiple convictions. Plaint.Prelim.Inj.Br. at 30. As the City and the United States contend, however, the Court is concerned only with the basic rationality of the classification, not the type of differential treatment Gillespie seeks to challenge, for "an individual's right to equal protection of the laws ... does not deny [Congress] ... the power to treat different classes of persons in different ways." *NAGE v. Barrett*, 968 F.Supp. 1564, 1573 (N.D.Ga.1997) (quoting *Johnson v. Robison*, 415 U.S. 361, 374, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389 (1974)).

Examining the legislative history available, it is clear that Congress was concerned with the fact that many victims of domestic violence are murdered by their attackers and sought to remove firearms from a particular class of individuals who have already been convicted of a domestic violence offense. *See* 142 Cong.Rec. S11,227 (daily ed. Sept. 25, 1996) (statement of Sen. Lautenberg) ("the presence of a gun dramatically increases the likelihood that domestic violence will escalate into murder"). Congress determined that an individual "who attempts or threatens violence against a loved one has demonstrated that he or she poses an unacceptable risk and should be prohibited from possessing firearms." 142 Cong.Rec. S11,877 (daily ed. Sept. 30, 1996) (statement of Sen. Lautenberg); *see also* 142 Cong.Rec. S10,379 (daily ed. Sept. 12, 1996) (statement of Sen. Murray) ("In the face of the reality of domestic violence and the role guns play in homicides in such situations, the Senate cannot allow convicted abusers to have guns," citing statistics).

We find that preventing domestic violence misdemeanants from possessing a firearm is reasonably related to the legitimate government purposes of keeping firearms out of the hands of potentially dangerous or irresponsible persons and protecting victims of domestic violence from being murdered by their attackers. In addition, we note that the fact that Congress has selected only one class of violent misdemeanants does not serve to invalidate the statute, as "the legislature must be allowed some leeway to approach a perceived problem incrementally." *FCC v. Beach Communications*, 508 U.S. at 316, 113 S.Ct. at 2102.

Second, Gillespie argues that § 922(g)(9) violates his equal protection rights because the statute has a disproportionate impact on law enforcement officials. *See* Plaint.Prelim.Inj.Br. at 31. Gillespie does not allege that the statute singles out police officers, and we note that the statute is facially neutral. While we recognize that the ultimate effect of the statute on Gillespie and other law enforcement officials who have misdemeanor domestic violence convictions likely will be the loss of their employment because such positions generally mandate possession of a firearm, the disparate impact of a law that is neutral on its face may invalidate the statute only if the disparate impact can be traced to a discriminatory purpose. *See e.g., Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 272, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979). As the City and the United States argue, Gillespie has not alleged or shown any discriminatory purpose (*see* Defs.Mot.Br. at 21–22; Govt. Mot.Br. at 26), and the legislative history does not reveal any evidence that Congress sought to discriminate against law enforcement personnel. *See also NAGE*, 968 F.Supp. at 1575 (finding no discriminatory purpose in the enactment of § 922(g)(9)).[10]

---

10. Gillespie contends further that the "reliance interest" in the extensive training and experience of officers like Gillespie warrants at least only prospective application of the firearms disability. *See* Plaint.Prelim.Inj.Br. at 31–32. This argument is not relevant to an equal protection inquiry and not within the proper limits of the judicial sphere, but rather belongs in the legislative arena. We note that there are currently bills pending in both the Senate and the House of Repre-

Thus, we *grant* the City's and the United States' motions to dismiss Gillespie's Fifth Amendment equal protection claim in Count III of his complaint.

### Count III: Fifth Amendment Challenge—Due Process

■ The City and the United States also move to dismiss Gillespie's substantive and procedural due process claims as set forth in Count III of his complaint (*see* Compl. ¶¶ 99–114). See Defs.Mot.Br. at 22–23; Govt. Mot.Br. at 27–28. The Due Process Clause of the Fifth Amendment provides: "No person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.·In support of his due process claims, Gillespie asserts:

> The right to bear arms and the right to a reasonable expectancy interest in continued employment or status in the community secured by existing state and federal law cannot be removed arbitrarily.

Plaint.Prelim.Inj.Br. at 32. However, as we noted previously in our discussion of Gillespie's equal protection claims, these are not fundamental rights, and thus Gillespie's substantive due process claim must be analyzed under the rational basis test. *See TRM, Inc. v. United States*, 52 F.3d 941, 945 (11th Cir.1995). Because we have already determined that the Lautenberg Amendment satisfies rational basis review (see equal protection discussion, *supra*), Gillespie's substantive due process claim is foreclosed.

■ Turning to Gillespie's procedural due process claim, the City correctly contends that "Gillespie does not articulate how the GCA amendments violate procedural due process." Defs.Mot.Br. at 22. To the extent that Gillespie challenges the legislative process in enacting § 922(g)(9), his claim must fail, for:

> when the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process.

sentatives proposing prospective application of § 922(g)(9). *See* S. 262, 105th Cong. (1997);

*Brown v. Retirement Comm.*, 797 F.2d 521, 527 (7th Cir.1986) (quoting J. Nowak, R. Rotunda & J. Young, Constitutional Law 556 (1983)). *See also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432–433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982) ("the legislative determination provides all the process that is due"); *United States v. LULAC*, 793 F.2d 636, 648 (5th Cir.1986). If Gillespie were to challenge the pre- and post-termination procedures of the Indianapolis Police Department, which he does not argue in his complaint or briefs, we would find such a claim premature, for he has not completed the administrative review process provided by the Department, and the Merit Board *de novo* review process, as described in the parties' briefing (*see* Defs.Mot.Br. at 4), appears to provide sufficient notice and opportunity for a hearing. In any event, Gillespie does not specify any particular failings in the review process. Having found no merit in Gillespie's due process challenges, we *grant* the City's and the United States' motions to dismiss Gillespie's substantive and procedural due process claims in Count III.

### Count III: Bill of Attainder and Ex Post Facto Challenges

■ Gillespie also asserts in Count III of his complaint that § 922(g)(9) violates the Bill of Attainder and Ex Post Facto Clause of the Constitution. *See* U.S. Const. art. I, § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed"). Gillespie contends that the statute creates retroactive criminal penalties and removes a previous law enforcement class exemption. *See* Compl. ¶¶ 104, 110, 111. Both the City and the United States move to dismiss Gillespie's claims as to alleged violation of the bill of attainder and ex post facto clause. *See* Defs. Mot.Br. at 23–27; Govt.Mot.Br. at 30–34. A bill of attainder is:

> a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protection of a judicial trial.

H.R.26, 105th Cong. (1997).

*Selective Service Sys. v. Minnesota Public Interest Research Group,* 468 U.S. 841, 846–847, 104 S.Ct. 3348, 3352, 82 L.Ed.2d 632 (1984). An ex post facto law:

must be retrospective, that is—it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime.

*Lynce v. Mathis,* 519 U.S. 433, 117 S.Ct. 891, 896, 137 L.Ed.2d 63 (1997) (citations omitted).

Gillespie did not present arguments regarding his bill of attainder and ex post fact claims in his motion for preliminary injunction and, more importantly, failed to respond to the City's and the United States' motions to dismiss these claims in his response brief, arguing only his Commerce Clause, Tenth Amendment, Fifth Amendment and Contract Clause claims. *See* Plaint.Prelim.Inj.Br.; Plaint.Resp.Br. Thus, we hold that Gillespie has abandoned his ex post facto and bill of attainder claims (*see Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996) (plaintiff abandoned claim after failing to respond to argument in motion for summary judgment)), undoubtedly because the case law and legislative history argue so clearly against Gillespie's position.[11] Accordingly, we *grant* the City's and the United States' motions to dismiss as to these claims in Count III.

### Count IV: Second Amendment Challenge

■ In Count IV of his complaint, Gillespie maintains that the Lautenberg Amendment violates his Second Amendment right to bear arms, both as an individual and in his capacity as a police officer. *See* Compl. ¶¶ 115–129. In his preliminary injunction brief, Gillespie concedes that the Second Amendment "has not yet been held to contain a personal right to keep and bear arms." *See* Plaint.Prelim.Inj.Br. at 33; *see also* Plaint.Resp.Br. at 6 ("Officer Gillespie is not challenging a restriction on his private behavior"). Instead of pursuing his private right to carry a firearm, Gillespie seeks to vindicate his individual right to possess a gun as a law enforcement officer of the State of Indiana, in other words, as someone whose possession relates to a state militia, or in the alternative, the collective right of the state to preserve and regulate the militia.

Here Plaintiff's contention is that the 1996 GCA Amendments, at least so far as they purport to regulate purely intrastate possession of a firearm possessed in the public interest and according to the proper exercise of the police power of the state, run afoul of the Second Amendment.

Plaint.Prelim.Inj.Br. at 34. Gillespie does not appear to dispute application of the *Miller* language, which requires "some reasonable relationship to the preservation or efficiency of a well regulated militia" (*see Miller,* 307 U.S. at 178, 59 S.Ct. at 818) but contends that his role in the Indianapolis Police Department in fact bears a strong relation to a militia. Gillespie quotes *Miller,* which stated that a sawed-off shotgun was not shown to be "ordinary military equipment" or a weapon whose "use could contribute to the common defense" (*see* Plaint.Prelim.Inj.Br. at 34) (quoting *Miller,* 307 U.S. at 178, 59 S.Ct. at 818) and argues that his police firearm is just such a weapon:

---

**11.** Even if we were to address the merits of Gillespie's ex post facto and bill of attainder challenges, we would find his claims unavailing, for the Lautenberg Amendment (1) only criminalizes conduct occurring after the effective date of the statute (possession of a firearm by domestic violence offender), (2) was not enacted for punitive purposes and (3) is reasonably related to preventing crime and protecting the victims of domestic violence. *See United States v. Brady,* 26 F.3d 282, 291 (2d Cir.1994) (ex post facto clause not violated when statute punishes crime committed after effective date); *United States v. Allen,* 886 F.2d 143, 146 (8th Cir.1989) ("So long as the actual crime for which a defendant is

being sentenced occurred after the effective date of the new statute, there is no ex post facto violation"). *See also De Veau v. Braisted,* 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (bill of attainder only if legislative purpose is punitive; purpose of statute was to regulate waterfront, not punish ex-felons); *Huddleston v. United States,* 415 U.S. 814, 824, 94 S.Ct. 1262, 1268, 39 L.Ed.2d 782 (1968) (purpose of federal gun control is to "curb crime" by preventing possession by youths, criminals and incompetents); 142 Cong.Rec. S11,872–S11,886 (daily ed. Sept. 30, 1996) (statement of Sen. Lautenberg) (purpose of Lautenberg Amendment is to protect victims of domestic violence).

The firearm carried in the public interest by a law enforcement officer is a firearm that is *de facto* in the State Militia. Plaintiff's service firearm is not simply a private firearm. . . .

Plaint.Prelim.Inj.Br. at 34–35 (citations omitted). Gillespie cites the fact that he is subject to the Indiana Governor's call, and as a police officer he is also imbued with certain police powers of the state. *See* Plaint.Prelim.Inj.Br. at 34 (citing Ind.Code § 10–1–1–10).

The City and the United States maintain that Gillespie's claim must fail, contending that there is no personal right that can be vindicated under the Second Amendment, but only a collective right belonging to the states. *See* Defs.Mot.Br. at 16–17; Govt. Mot.Br. at 22–23. They direct the Court to several federal circuit court decisions that hold that the Second Amendment guarantees only a collective right to the states. *See Hickman v. Block,* 81 F.3d 98, 102 (9th Cir. 1996); *Love v. Pepersack,* 47 F.3d 120, 124 (4th Cir.1995); *United States v. Warin,* 530 F.2d 103, 106 (6th Cir.1976); *see also Cases v. United States,* 131 F.2d 916 (1st Cir.1942); *United States v. Tot,* 131 F.2d 261 (3d Cir. 1942), rev'd on other grounds, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). We note that the Supreme Court has not had occasion to opine specifically on this issue. *See Printz,* 521 U.S. ——, 117 S.Ct. at 2386, 138 L.Ed.2d 914 (Thomas, J., concurring). While we believe the existence of a collective rather than an individual right is far from settled, in observing the dictates of judicial restraint, we will not decide the question unless absolutely necessary.

We need not reach the issue of whether the right safeguarded by the Second Amendment is individual or collective in nature or what level of judicial review would be appropriate, because even giving the most generous construction to the Second Amendment, we find that Gillespie's claim fails. Even if the Court applies strict scrutiny, the most stringent standard of review for basic constitutional rights, we find that § 922(g)(9) survives. The doctrine of strict scrutiny teaches that a statute infringing a fundamental constitutional right will be invalidated unless it is "narrowly tailored to serve a compelling governmental interest." *See, e.g., Reno v. Flores,* 507 U.S. 292, 301–302, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993); *Plyler v. Doe,* 457 U.S. 202, 216–217, 102 S.Ct. 2382, 2394–2395, 72 L.Ed.2d 786 (1982).

Applying strict scrutiny to the gun control statute at issue, we find that § 922(g)(9) survives Gillespie's challenge, for the law is narrowly tailored to serve Congress' compelling governmental interest in keeping deadly firearms away from persons reasonably adjudged by Congress to be dangerous or irresponsible, as well as preventing victims of domestic violence from being killed by their attackers with a firearm. The statute is narrowly tailored in that it applies only to persons who have been convicted previously in a court of law of a crime of domestic violence, and Congress cited many statistics linking the presence of firearms to the substantial number of deaths resulting from domestic violence disputes. *See, e.g.,* 142 Cong. Rec. S11,227 (daily ed. Sept. 25, 1996) (statement of Sen. Lautenberg) ("in households with a history of battery, the presence of a gun increases the likelihood that a woman will be killed threefold;" purpose of amendments is to protect domestic violence victims from further harm); 142 Cong.Rec. S 10,377–01, S 10,378 (daily ed. Sept. 12, 1996) (statement of Sen Lautenberg) ("two-thirds of domestic violence murders involve firearms"). Thus, even considering the facts and the law in a light most generous to Gillespie's claim, we find that the Lautenberg Amendment does not violate the Second Amendment and we *grant* the City's and the United States' motions to dismiss as to this claim.

*Count V: Contract Clause Challenge*

Gillespie claims in Count V of his complaint that the Lautenberg Amendment violates the proscription on the impairment of contracts, as set forth in Article I, § 10, cl. 1 of the Constitution: "No state shall . . . pass any . . . Law impairing the Obligation of Contracts. . . ." Gillespie contends that § 922(g)(9) is "compelled state legislation" that "operates to substantially impair Plaintiff's oath-based contractual obligations." *See* Plaint.Prelim.Inj.Br. at 36–38. The City

and the United States both move to dismiss Gillespie's Contract Clause claim, asserting that (1) the Contract Clause applies on its face only to states, not the federal government and (2) the Lautenberg Amendment is not compelled state legislation. *See* Defs. Mot.Br. at 27–28; Govt.Mot.Br. at 29–30.

 In assessing whether an impairment of contract violates the constitution, the must balance the individual's contractual rights against "the essential attributes of sovereign power necessarily reserved by the States to safeguard the welfare of their citizens." *United States Trust Co. v. New Jersey*, 431 U.S. 1, 21, 97 S.Ct. 1505, 1517, 52 L.Ed.2d 92 (1977) (citations omitted). As the City and the United States correctly argue and as Gillespie concedes (*see* Plaint.Prelim.Inj.Br. at 36), however, the Contract Clause applies only to states; it does not operate as a restriction upon "actions of the National Government." *See Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 n. 9, 104 S.Ct. 2709, 2719 n. 9, 81 L.Ed.2d 601 (1984). When a plaintiff invokes the Contract Clause against a federal statute, courts typically analyze the statute under the Due Process Clause of the Fifth Amendment, assessing first whether "the statute alters constitutional rights or obligations" and second, whether the impairment is minimal or "of constitutional dimension." *See National R.R. Corp. v. Atchison, Topeka and Santa Fe Railway*, 470 U.S. 451, 472, 105 S.Ct. 1441, 1455, 84 L.Ed.2d 432 (1985). Assuming for the sake of argument that the statute's interference with Gillespie's employment contract with the Indianapolis Police Department is, in fact, a substantial constitutional impairment, we must analyze the legislation under the Due Process Clause.

> When the contract is a private one, and when the impairing statute is a federal one, this next inquiry is especially limited, and the judicial scrutiny quite minimal. The party asserting a Fifth Amendment due process violation must overcome a presumption of constitutionality and establish that the legislature has acted in an arbitrary and irrational way.

*National R.R.*, 470 U.S. at 472, 105 S.Ct. at 1455 (1985). However, we have already addressed and denied Gillespie's procedural due process claim, *supra*, and we necessarily find Gillespie's Contract Clause claim similarly unavailing. In addition, we addressed Gillespie's argument that the statute operates as "compelled state legislation" in our dismissal of his Tenth Amendment claim, *supra*. Therefore, we *grant* the City's and the United States' motions to dismiss Count V of Gillespie's complaint.

### Count VI: Pendent State Law Claims

The City moves the Court to dismiss Gillespie's pendent state law claims under the Indiana Constitution, arguing that the Supremacy Clause defeats any claim Gillespie may assert under state law. *See* Defs. Mot.Br. at 28. Gillespie contends in his complaint that the Lautenberg Amendment violates the Indiana Constitution, which protects the right to bear arms and proscribes ex post facto laws and bills of attainder. *See* Compl. ¶¶ 142–148. However, Gillespie appears to have abandoned these claims, not having raised them in his motion for preliminary injunction and not responding to the City's motion to dismiss Gillespie's state law claims. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d ·560, 562 (7th Cir.1996). Thus, we do not need to reach the merits of Gillespie's state law claims and we *grant* the City's motion to dismiss Count VI of the complaint.

### Gillespie's Motion for Preliminary Injunction

We now turn to Gillespie's motion for preliminary injunction. Having granted the City's and the United States' motions to dismiss as to all of Gillespie's claims, we have disposed of the case and nothing remains to litigate at this time. Thus, it is unnecessary to address the merits of Gillespie's preliminary injunction motion, which we *deny as moot.*

### CONCLUSION

Plaintiff Gillespie seeks preliminary injunctive relief, challenging the constitutionality of § 922(g)(9) in order to prevent Defendants the City of Indianapolis, the Indianapolis Police Department and Police Chief Michael Zunk from firing him from his position as a City of Indianapolis police officer. Gillespie

moves to strike the United States' motion to dismiss and arguments as to Gillespie's standing and the ripeness of his claims on the ground that such arguments are beyond the scope of the United States' intervention.

Defendants move to dismiss Gillespie's claims, asserting that (1) the Police Department and Michael Zunk are not proper defendants to this action; (2) the statute does not violate the Tenth Amendment because it does not compel the states to do anything; (3) § 922(g)(9) is a proper exercise of Congressional authority under the Commerce Clause; (4) the statute does not violate equal protection because it is rationally related to a legitimate governmental purpose; (5) the statute does not violate due process because it satisfies the rational basis test and Gillespie is being provided sufficient review of his termination decision; (6) § 922(g)(9) does not violate the bill of attainder and ex post facto clause because its purpose is not punitive and it criminalizes conduct occurring after enactment of the statute; (7) the statute does not violate the Second Amendment because there is no constitutional right to possess a firearm; (8) § 922(g)(9) does not violate the Contract Clause because the Contract Clause applies only to state legislation and (9) Gillespie's state law claims are foreclosed by the Supremacy Clause.

The United States similarly moves the Court to dismiss Gillespie's Tenth Amendment, Commerce Clause, equal protection, due process, bill of attainder/ex post facto clause, Second Amendment and Contract Clause claims and also challenges Gillespie's standing and the ripeness of the present claims. In addition, the United States argues that the scope of its intervention is broad enough to encompass the arguments contained within its motion to dismiss, in order to allow the government to present a full discussion of the constitutionality of § 922(g)(9). For the reasons set forth above, we *deny* Gillespie's motion to strike the United States' motion to dismiss and its jurisdictional arguments on standing and ripeness, *grant* Defendants' motion to dismiss as to all of Gillespie's claims, *grant* the United States' motion to dismiss as to all of Gillespie's

claims and *deny as moot* Gillespie's motion for preliminary injunction.