THE FRATERNAL ORDER
OF POLICE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civil Action No. 97–0145 (JR).

United States District Court,
District of Columbia.

Oct. 2, 1997.

Ellen Efros, Tim McGarey, Vorys, Sater, Seymour and Pease, Washington, DC and William J. Friedman, Santa Fe, NM, for Plaintiff.

Mark Sitcov, Andrea Newark, U.S. Dept. of Justice, Civil Div., Washington, DC, for Defendant.

## MEMORANDUM OPINION

ROBERTSON, District Judge.

A 1996 amendment to the Gun Control Act of 1968 makes it illegal for any person "convicted in any court of a misdemeanor crime of domestic violence" to ship, receive or possess firearms or ammunition that affect interstate commerce. 18 U.S.C. § 922(g)(9). Unlike all other firearm disabilities in 18 U.S.C. § 922(g), the 1996 amendment applies to law enforcement officers. 18 U.S.C. § 925(a)(1).

This action by the Fraternal Order of Police ("FOP"), an association of law enforcement officers, asserts that the new law exceeds Congress' legislative power under the Commerce Clause and the Tenth Amendment and that it violates the Due Process Clause of the Fifth Amendment.[1] The claims that remain viable after the Supreme Court's decision in *Printz v. United States*, — U.S. —, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997),[2] deal with the provision of the new law that prohibits possession of firearms by persons convicted of domestic violence misdemeanors, 18 U.S.C. § 922(g)(9).

Before the court are plaintiff's motion for a preliminary injunction and defendant's motion for dismissal or summary judgment. Defendant's motion will be granted because, although plaintiff does have standing, it has

---

1. The challenge is stated in Equal Protection Clause parlance, but of course it actually lies under the Due Process Clause. *See* part 2b *infra*.

2. The complaint in this action also challenged the sections of the law requiring state agents,

such as chief law enforcement officers (CLEOs) to expand the scope of background checks undertaken before firearms are transferred. 18 U.S.C. § 922(g)(2). *Printz* invalidated those requirements.

not stated claims for which relief can be granted.

### 1. *Standing*

An association may sue on behalf of its members if it demonstrates that: (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) the claims asserted and the relief requested do not require the participation of individual members in the lawsuit. *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, ——, 116 S.Ct. 1529, 1534, 134 L.Ed.2d 758 (1996). Plaintiff easily satisfies the second and third elements: FOP lists the promotion of its members' legal interests among its purposes (including law enforcement officers), and no single member of FOP is irreplaceable in the litigation. *See* Plaintiff's Motion for Preliminary Injunction at Exhibit 4; Plaintiff's Opposition to the Motion to Dismiss at Exhibits 1–5. The first element—that some FOP members must have standing in their own right—requires further analysis.

Plaintiff has filed the affidavits of two FOP members who are law enforcement officers and have been convicted of domestic violence misdemeanors. Plaintiff alleges that the threatened application of 18 U.S.C. § 922(g)(9) has injured and, unless enjoined, will continue to injure those individuals and other member law enforcement officers by infringing on their constitutional rights to possess firearms, impeding their ability to serve as law enforcement officers, diminishing their job-related responsibilities, and resulting, for some of them, in termination of their employment. Complaint at ¶ 25.

Pre-enforcement constitutional challenges of criminal statutes are most frequently allowed when the threat of criminal prosecution against a complainant is "genuine and imminent." *Navegar, Inc. v. United States*, 103 F.3d 994, 1001 (D.C.Cir.1997). FOP acknowledges that no specific threat of prosecution has been made against its members. FOP does assert, however, that members who have been convicted of domestic violence misdemeanors have been injured by adverse administrative actions taken by local and state law enforcement agencies attempting to comply with the new law. Officers Fidel Ortega and Dennis Meerdter have had their firearms taken from them and have been reassigned to positions of lesser responsibility or put on leave, and they have been unable to work in off-duty security jobs. Officer Ortega states further that lawful possession of a firearm is a prerequisite for all the available positions in his police department, and that he faces termination when his leave expires. Plaintiff's Opposition to Motion to Dismiss, Exhibit 1, ¶¶ 16, 21. The uncontroverted affidavits establish injury that is sufficiently concrete and imminent to confer standing on Officers Ortega and Meerdter, if the injury is "fairly traceable" to the government's action.

"Traceability" can be refuted when the injury which allegedly confers standing results from "unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615, 109 S.Ct. 2037, 2044, 104 L.Ed.2d 696 (1989); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) (quoting *ASARCO*). Courts have thus refused to find a causal link between an injury and government action where the injury is potentially attributable to a myriad of sources. *See, e.g., San Diego Co. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir.1996) (no cognizable economic injury to gun manufacturers because other forces acting in the market had affected the prices, making it impossible to conclude that the passage of a statute had caused the injurious price increase). This case does not present that situation, however. Local and state law enforcement agencies do not have "unfettered choices" or "legitimate discretion" to flout a federal statute by hiring, or continuing to employ, officers whose possession of firearms is a crime.

As for defendant's argument that the new law would not apply to Ortega and Meerdter because their misdemeanor convictions have been dismissed or expunged, 18 U.S.C. 921(a)(33)(B)(ii), the affidavits, Plaintiff's Op-

**4**

position to the Motion to Dismiss at Exhibit 1, ¶ 13 & Exhibit 2, ¶ 12, refute the point. A fair reading of Officer Ortega's affidavit recites his *belief* in 1975 that the charge had been "dismissed," but states that he has since learned that it still exists for purposes of the new federal law. Officer Meerdter states that he has taken steps to expunge his conviction from his record, but that has been told by his employer that a recent court action was "insufficient" to exclude him from the new law's coverage.

Because Ortega and Meerdter would have standing to sue, FOP has standing.

## 2. *Merits*

### a. *Commerce Clause*

Plaintiff asserts that § 922(g)(9) is unconstitutional on its face—that Congress does not have the authority under the Commerce Clause to punish the possession of firearms by convicted misdemeanants. The Supreme Court's decision in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), does not support—and indeed its rationale defeats—that assertion. *Lopez* invalidated a portion of the Gun Free School Zones Act that made it unlawful "for any individual knowingly to possess a firearm at a place that the individual knows, or has reason to believe, is a school zone." The Court observed that the statute "contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at 561, 115 S.Ct. at 1631.

■ The statute in this case contains just such a jurisdictional element. 18 U.S.C. § 922(g)(9) makes it unlawful for persons "who have been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport *in interstate or foreign commerce,* or possess *in or affecting commerce,* any firearms or ammunition; or to receive any firearm or ammunition which has been shipped or transported *in interstate or foreign commerce."* (emphasis added). *See United States v. Nguyen,* 88 F.3d 812, 820–21 (9th Cir.1996) (holding that the felon in possession law, § 922(g)(1), is constitutional); *see also United States v. Smith,* 101 F.3d 202, 215 (1st Cir.1996); *United States v. Lewis,* 100 F.3d 49, 51 (7th Cir.1996); *United States v. Wells,* 98 F.3d 808, 811 (4th Cir. 1996) (collecting cases); *United States v. Barry,* 98 F.3d 373, 378 (8th Cir.1996); *United States v. Sanders,* 97 F.3d 856, 862 (6th Cir.1996); *United States v. Garcia,* 94 F.3d 57, 64 (2d Cir.1996). Plaintiff's constitutional challenge based on the Commerce Clause must be rejected.

### b. *Due Process Clause*

Plaintiff maintains that Section 922(g)(9) violates the Due Process Clause by (1) infringing upon members' rights to possess firearms, (2) irrationally targeting a single class of misdemeanants who had committed crimes of violence, and (3) discriminating against law enforcement officers who have been convicted of misdemeanors of domestic violence. *See Vance v. Bradley,* 440 U.S. 93, 94 n. 1, 99 S.Ct. 939, 941 n. 1, 59 L.Ed.2d 171 (1979) ("Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws.")

■ (1) A statute challenged under the equal protection clause receives rational basis review unless the statute infringes on the exercise of a fundamental right or operates to the disadvantage a suspect class. *See, e.g., Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *Association of Civilian Technicians v. FLRA,* 756 F.2d 172, 177 (D.C.Cir.1985). Plaintiff concedes that there is no suspect class at issue here, but maintains that the right to possess firearms is fundamental for equal protection purposes. There is no constitutionally protected right to keep and bear a firearm, however, that does not have "some reasonable relationship to the preservation or efficiency of a well regulated militia." *United States v. Miller,* 307 U.S. 174, 178, 59 S.Ct. 816, 818, 83 L.Ed. 1206 (1939); *see also Lewis v. United States,* 445 U.S. 55, 65 n. 8, 100 S.Ct. 915, 921 n. 8, 63 L.Ed.2d 198 (1980) (restriction on possession of firearms by felon does not "trench upon any constitutionally protected liberties"); *United States v. Johnson,* 497 F.2d 548, 550 (4th Cir.1974) (holding that § 922(g) does not violate the Second Amendment). Plaintiff

has not alleged, much less proven, that § 922(g)(9) has any relationship to the "preservation and efficiency of a well-regulated militia." No fundamental right is implicated by the new law.

▆▆ (2) Plaintiff argues next that imposing a firearm disability only on those who have committed domestic violence gives irrationally preferential treatment to people who have been convicted of other types of violent misdemeanors. Section 922(g)(9) must be upheld if the classification it establishes is "rationally related to achievement of a legitimate governmental interest," *Department of Agriculture v. Moreno,* 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973), and statutory classifications are presumptively valid. *See Lyng v. Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers,* 485 U.S. 360, 370, 108 S.Ct. 1184, 1192, 99 L.Ed.2d 380 (1988). The equal protection clause requires only a "reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). Like other gun control provisions, the purpose of § 922(g)(9) is "keeping firearms out of the hands of categories of potentially irresponsible persons...." *Barrett v. United States,* 423 U.S. 212, 220–21, 96 S.Ct. 498, 503, 46 L.Ed.2d 450 (1976). The state of facts which provides a rational basis for the classification at issue here is not only "reasonably conceivable" but was identified in the Senate: The sponsor of Section 922(g)(9), Senator Frank Lautenberg, observed that a person "who attempts or threatens violence against a loved one has demonstrated that he or she poses an unacceptable risk." 142 Cong. Rec. S11227 (daily ed. Sept. 30, 1996). Indeed, Senator Lautenberg cited a study which concluded that "in households with a history of battery, the presence of a gun increases the likelihood that a woman will be killed threefold." 142 Cong. Rec. S11227 (daily ed. Sept. 25, 1996).

▆▆ (3) Plaintiff goes on to argue that the statute disproportionately affects law enforcement officers who may be required to carry firearms as a condition of their employment. The disparate impact of a facially neutral law is of no constitutional significance unless the uneven effect is traced to a discriminatory purpose. *See Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979) ("[w]hen the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern"); *see also Washington v. Davis,* 426 U.S. 229, 240–41, 96 S.Ct. 2040, 2047–48, 48 L.Ed.2d 597 (1976). Because no discriminatory purpose has been alleged in this case, this claim must fail.

Section 922(g)(9) does not violate the Due Process Clause.

### c. *Tenth Amendment*

▆▆ The Supreme Court has explained that "[i]f a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States...." *New York v. United States,* 505 U.S. 144, 156, 112 S.Ct. 2408, 2417, 120 L.Ed.2d 120 (1992). Thus, the exercise by Congress of a power delegated to it by the Constitution does not violate the Tenth Amendment, and the conclusion that the 1996 amendment to the Gun Control Act is a valid exercise of the Commerce Clause, *supra,* disposes of plaintiff's Tenth Amendment claim. *See United States v. Collins,* 61 F.3d 1379, 1384 (9th Cir.1995).

Plaintiff maintains, however, that the potential *effects* of the statute violate the Tenth Amendment—that, in passing § 922(g)(9), Congress made "all the policy decisions for the States including determining [sic] the substantive criminal law by defining the offense, naming the punishment and the collateral firearm disability, defined [sic] the exceptions and commanded [sic] State and local officials to implement, enforce and pay for its choices." Pl. Mot. for Prelim. Inj. at 5.

That argument goes far beyond the Supreme Court's decision in *Printz v. United States, supra,* and misconstrues *New York v. United States, supra.* In the *New York* case, the Supreme Court struck down legislation that required states either to enact legislation providing for the disposal of radioactive waste generated within their borders, or to

take title to such waste. *Id.* at 175–77, 112 S.Ct. at 2427–29. The statute was not constitutionally permissible because it directly required action on the part of the States. In contrast, § 922(g)(9) places no requirements on States or state officials. Congress has not compelled state regulation where "any burden caused by a State's refusal to regulate will fall on [individuals], rather than on the State as a sovereign." *Id.* at 174, 112 S.Ct. at 2427. The Tenth Amendment is not implicated by the new law, except to the extent that its purported requirements of CLEO's have already been invalidated by *Printz.*

For all the reasons explained above, plaintiff's motion for a preliminary injunction must be denied, and defendant's motion to dismiss, treated as a motion for summary judgment pursuant to F.R.Civ.P. 12(b), will be granted. An appropriate order accompanies this opinion.

### ORDER

For the reasons set forth in the Memorandum Opinion issued today, it is this 2d day of October, 1997,

**ORDERED** that plaintiff's motion for preliminary injunction [# 3] is denied. And it is

**FURTHER ORDERED** that defendant's motion for summary judgment [# 10] is **granted.**