**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 98-4750

TRURIEL B. NATHAN,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CR-98-116)

Argued: October 28, 1999

Decided: January 19, 2000

Before NIEMEYER and WILLIAMS, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Williams and Senior Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Steven D. Benjamin, BENJAMIN & DESPORTES, P.C.,
Richmond, Virginia, for Appellant. John Staige Davis, V, Assistant
United States Attorney, Richmond, Virginia, for Appellee. **ON
BRIEF:** Betty Layne DesPortes, BENJAMIN & DESPORTES, P.C.,
Richmond, Virginia, for Appellant. Helen F. Fahey, United States
Attorney, Richmond, Virginia, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Truriel B. Nathan was arrested in Richmond, Virginia, by Richmond police officers for possession of a firearm and ammunition and thereafter charged with firearm offenses under both state and federal laws. His state charges were dismissed, however, and he was tried and convicted in federal court for violating 18 U.S.C.§ 922(g)(1). On appeal, he makes several challenges to his conviction, including a federalism-based constitutional challenge to "Project Exile," a cooperative federal-state venture under which firearm-related offenses are prosecuted federally. We affirm.

I

On the night of February 24, 1998, two Richmond police officers followed Nathan as he drove his car into a convenience store parking lot because the car's headlights were not on. After Nathan parked his car and began to walk toward the store, Officer Mills asked to speak with him. The officer noticed a bulge on the upper left side of Nathan's coat as Nathan walked toward him. Reaching out and patting the pocket, Officer Mills asked, "What is this?" When Nathan responded that it was ammunition, Officer Mills asked Nathan if he had a gun, and Nathan responded that he did. Officer Mills and Officer Robinson then handcuffed Nathan and recovered a loaded .380 caliber semiautomatic pistol, manufactured in Ohio, and a box of .380 caliber ammunition, manufactured in Arkansas.

Although Nathan was originally charged with a state crime, his case was handled under "Project Exile," a federal-state law enforcement program in Richmond under which many firearms offenses are prosecuted in federal rather than state court by agreement of state and federal law enforcement officials. Because Nathan had previously been convicted of a felony, he was indicted for violating 18 U.S.C. § 922(g)(1), the federal felon-in-possession firearm statute. At the preliminary hearing on Nathan's state charges, a nolle prosequi was entered on the motion of the Commonwealth's Attorney, and Nathan's state charges were dismissed.

2

Project Exile is a federal-state law enforcement initiative jointly run by the Virginia Commonwealth's Attorney for the City of Richmond and the U.S. Attorney for the Eastern District of Virginia. The project was implemented in Richmond in February 1997 with the goal of reducing Richmond's high rates of violent crime by prosecuting firearm-related crimes federally whenever possible. As part of the project, local police officers are trained to identify state firearm offenses that also constitute federal offenses. Local police officers are encouraged to contact a federal agent using a 24-hour pager number whenever they encounter a gun in performing their duties, and, together with the federal agent, to determine whether federal law has been violated. An assistant Commonwealth's Attorney assists the U.S. Attorney with the federal prosecution of cases under Project Exile. The project is publicized through advertising on television, on billboards, on buses, and in other venues, all paid for by the "Project Exile Citizens Support Foundation," a private group for which the U.S. Attorney helps to solicit contributions from local merchants.

Before trial, Nathan filed a motion to dismiss his indictment on several grounds, including a constitutional challenge to Project Exile. He argued that he was denied due process of law in violation of the Fifth Amendment because his federal prosecution was vindictive and biased and that moving prosecutions from state to federal court violated principles of federalism in violation of the Tenth Amendment. The district court denied the motion, and the case proceeded to trial.

At trial, the district court instructed the jury that the government was required to prove that Nathan's possession of the firearm and ammunition "was in or affecting interstate or foreign commerce because the firearm or ammunition had traveled in interstate or foreign commerce at some point during its existence." The court explained to the jury that "[t]he Government may meet its burden with respect to this element by proving that the firearm or ammunition in question . . . previously traveled in interstate commerce." Nathan objected to these instructions, arguing that, under 18 U.S.C. § 922(g), a jury must find that the possession of a firearm "substantially affected" interstate commerce.

The jury convicted Nathan on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and the court sentenced him to 180 months in prison. He now appeals.

3

II

Nathan first challenges the constitutionality of Project Exile, claiming that his federal prosecution under the project violates principles of federalism embodied in the Tenth Amendment and contravenes the rule of Younger v. Harris, 401 U.S. 37, 53 (1971), which confines narrowly the availability of federal injunctive relief against state prosecutions.

To make his argument, however, Nathan mischaracterizes Project Exile by representing that the program suspends Virginia state law, interferes with state criminal proceedings, and conscripts state resources. To the contrary, Project Exile is a voluntary, cooperative venture between the U.S. Attorney and the Virginia Commonwealth Attorney for the City of Richmond. No part of the arrangement involves federal compulsion of the Commonwealth or its law enforcement officials. Rather, under the program, the federal government enforces its valid laws with the voluntary assistance of Commonwealth police officers and prosecutors, and the Commonwealth's attorneys voluntarily choose to dismiss state charges in favor of federal prosecution. As Chief Judge Wilkinson recognized in his concurring opinion in Brzonkala v. Virginia Polytechnic Inst. & State Univ., 169 F.3d 820, 895 (4th Cir. 1999), cert. granted sub nom., United States v. Morrison, 120 S. Ct. 11 (1999):"States remain free . . . after [Printz v. United States, 521 U.S. 898 (1997)] voluntarily to cooperate with federal law enforcement efforts."

Nor is Nathan correct in asserting that, under Project Exile, "the enforcement of Virginia firearm laws and the protections of Virginia criminal procedure have been suspended." Project Exile does not compel the Commonwealth to dismiss state firearm charges. And no law prevents the prosecution of state firearm offenses either before or after a federal criminal prosecution. When a defendant violates both state and federal laws, either the state or the United States or both may prosecute him. See United States v. Smith , 30 F.3d 568, 572 (4th Cir. 1994). We conclude that Nathan's federalism-based challenges to Project Exile have no merit.

III

Nathan next asserts that the existence of the "Project Exile Citizens Support Foundation" and efforts by the U.S. Attorney to solicit funds

4

for the group somehow served to create a conflict of interest or an infringement of Nathan's "right to an impartial prosecutor." The Citizens Support Foundation promotes Project Exile and publicizes the existence of stiff federal penalties for gun violations. The Supreme Court has indicated that, although prosecutors are "traditionally accorded wide discretion . . . in the enforcement process," nevertheless, "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." Marshall v. Jerrico, Inc., 446 U.S. 238, 248, 249-50 (1980) (citations omitted). Nathan fails, however, to show or even to allege that the U.S. Attorney receives any personal benefit from the activities of the Project Exile Citizens Support Foundation. Nor does Nathan demonstrate how the existence of a group seeking to inform the public about Project Exile in any way distorts or corrupts the exercise of prosecutorial discretion by the office of the U.S. Attorney. We therefore reject Nathan's argument that the existence of the Project Exile Citizens Support Group and the solicitation of funds for that group by the U.S. Attorney somehow tainted Nathan's prosecution.

IV

Finally, Nathan argues that the district court erred in instructing the jury with respect to the possession "in or affecting commerce" element of 18 U.S.C. § 922(g). He asserts that the Supreme Court's decision in United States v. Lopez, 514 U.S. 549 (1995), mandates that a jury find a "substantial effect" on interstate commerce as an element of any crime not involving channels or instrumentalities of commerce. He fails to appreciate, however, that the holding in Lopez did not address statutes containing a jurisdictional element that requires a case-by-case inquiry into the connection with commerce. See 514 U.S. at 561-62. Indeed, we have previously held that the existence of the jurisdictional element in 18 U.S.C. § 922(g), requiring that the government show a nexus between the firearm and interstate commerce, distinguishes Lopez and satisfies the nexus required for the Commerce Clause. See United States v. Wells, 98 F.3d 808, 810-11 (4th Cir. 1996). And we have further held that the fact that a gun is manufactured in one state and used in another is sufficient to establish the interstate commerce element of section 922(g). See United States

v. Crump, 120 F.3d 462, 466 & n.2 (4th Cir. 1997). Accordingly, the district court properly instructed the jury.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

6