Kent A. LOMONT, et al., Plaintiffs,

v.

Lawrence H. SUMMERS, Secretary, U.S. Department of Treasury, et al., Defendants.

No. CIV. A. 00–1935(JR).

United States District Court, District of Columbia.

Feb. 5, 2001.

**24**

Stephen P. Halbrook, Fairfax, VA, James H. Jeffries III, Greensboro, NC, Counsel for Plaintiff.

Sandra M. Schraibman, Thomas E. Caballero, U.S. Department of Justice, Washington, DC, Counsel for Defendants.

### *MEMORANDUM*

ROBERTSON, District Judge.

This case presents an APA challenge to certain provisions of twelve-year-old regulations implementing the National Firearms Act of 1934, 26 U.S.C. § 5801, et seq. The Act governs the manufacture, possession, and transfer of short barreled shotguns and rifles, machine guns, silencers, and "destructive" devices. The challenged provisions of the regulations, 27 C.F.R. § 179.85 and § 179.62, require that every application to manufacture or transfer a covered firearm be submitted on an ATF form that, in turn, requires certification from a chief law enforcement officer (CLEO)[1] that the CLEO is satisfied that the fingerprints and photograph submitted with the application are the applicant's and that there is no reason to believe possession of the firearm would place the applicant in violation of local or state law or that the firearm would be used for an unlawful purpose.

Plaintiffs are two law enforcement officers and seven private individuals. They allege that the CLEO certification requirement is unlawful because (1) it violates taxpayer privacy protections guaranteed by 26 U.S.C. § 6103, (2) it compels States to enact or administer a federal regulatory program contrary to the rule of *Printz v. United States,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), (3) it interferes with the duty of the Secretary of the Treasury to collect taxes under 26 U.S.C. § 6103, and (4) its delegation of authority to CLEOs is arbitrary, capricious, an abuse of discretion, and contrary to law.

---

1. Local chief of police, sheriff of the county, head of the state police, state or local district attorney or prosecutor, or such other person whose certificate may be acceptable to the ATF Director. 27 C.F.R. §§ 179.85, 179.62.

Defendants have moved to dismiss. They argue that plaintiffs lack standing to bring their claims and, in the alternative, that the complaint fails to state a claim for which relief can be granted. The motion will be granted. Plaintiffs do have standing to challenge the regulations, but the allegations of their complaint, which are taken as true for purposes of this motion, do not entitle them to relief.

*Standing*

"For each claim, if constitutional and prudential standing can be shown for at least one plaintiff, we need not consider the standing of the other plaintiffs to raise that claim." *Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228, 1232 (D.C.Cir.1996). The government concedes that plaintiff Grimes has standing to bring Count III (interference with duty of Secretary to collect taxes) and Count IV (delegation is arbitrary and capricious).

■ The government suggests that Grimes lacks standing to bring Count I (violation of privacy protections in 26 U.S.C. § 6103) because he did not specifically allege a privacy injury from his attempts to gain certification. Plaintiff Whelan does allege injury—that he is denied a permit because of his refusal for privacy reasons to seek certification—but, the government argues, he failed to exhaust his certification options. The case on which the government relies, *Steele v. National Firearms Act Branch*, 755 F.2d 1410 (11th Cir.1985) (no standing to challenge certification requirement where plaintiff did not attempt to get certification from all possible CLEOs), is inapposite. The plaintiff in that case was challenging refusals of CLEOs to sign the certificates, and the court could "not be sure whether the injury was caused by the defendant's actions or by appellant's failure to pursue all possible avenues ... to obtain the required signatures." *Id.* at 1415. Whelan's

alleged privacy injury arises when he discloses his transfer or manufacture application to any *one* of the CLEOs. Thus Whelan has standing to assert the claim set forth in Count I.

■ The law enforcement officer plaintiffs have standing to bring the Tenth Amendment challenge set forth in Count II. The government's argument to the contrary is that "ATF's regulations do not require these two plaintiffs to do anything," so that they have not suffered an injury in fact. Defs.' Mem. Supp. Mot. Dismiss at 17–18. In evaluating plaintiffs' standing, however, we do not recast merits arguments as jurisdictional ones. *Road Sprinkler Fitters Local Union v. Herman*, 234 F.3d 1316, 1319–20 (D.C.Cir.2000). Even though the regulations do not "compel" the CLEO plaintiffs to do anything, their allegations to the contrary are sufficient to confer standing.

*Taxpayer privacy*

■ Count I alleges that the certification requirement violates the taxpayer privacy provision of 26 U.S.C. § 6103. Section 6103 provides, *inter alia*, that except as otherwise provided, "no officer of the United States ... shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise." The argument is that, because the ATF form fits the statutory definition of a "return," and because applicants must show the form to the CLEO in order to get the necessary approval, "the applicant acts as the Secretary's agent in disclosing the form to the CLEO." Pl.'s Opp. Mot. Dismiss at 21. If the Secretary mandated the manufacture or transfer of the firearm, this argument might have currency. But, of course, it is the plaintiffs themselves who choose to manufacture or transfer the firearms. It is their choice, and only their

choice, that requires the submission of ATF forms to CLEOs. "Disclosure by the taxpayer himself of his copies of returns is not an unauthorized disclosure, even though it be made by reason of legal compulsion." *United States v. Sheriff, City of New York,* 330 F.2d 100, 101 (2d Cir.), *cert. denied,* 379 U.S. 929, 85 S.Ct. 323, 13 L.Ed.2d 341 (1964).

*Tenth Amendment*

■ Plaintiffs argue that the certification regulations violate the Tenth Amendment because they "compel the States to enact or administer a federal regulatory program," or put local officials "in the position of taking the blame for [the program's] burdensomeness and for its defects," or both. *Printz,* 521 U.S. at 926, 930, 117 S.Ct. 2365. This effort to invoke the rule of the *Printz* case fails. "States remain free ... after [*Printz* ] voluntarily to cooperate with federal law enforcement efforts." *United States v. Nathan,* 202 F.3d 230, 233 (4th Cir.2000) (citations omitted) (upholding a federal program because "[n]o part of the arrangement involves federal compulsion"), *cert. denied,* 529 U.S. 1123, 120 S.Ct. 1994, 146 L.Ed.2d 819 (2000). Unlike the statute at issue in *Printz,* these regulations do not compel local officials to act; rather, "these officials have the discretion to execute or not execute the required certifications." 53 Fed. Reg. 10480, 10488 (March 31, 1988). The claim of direct violation of the Tenth Amendment therefore fails. *Doe v. Bureau of Alcohol,* No. 3:94CV1699, 1997 WL 852086, at *7 (D.Conn. Sept.12, 1997); *Westfall v. Miller,* No. 4:93CV273, at *5–6 (E.D.Tex. Mar. 28, 1995), *aff'd on other grnds,* 77 F.3d 868, 870 (5th Cir.1996); *Steele v. National Firearms Act Branch,* No. 82–02013–CIV–SMA (S.D.Fla. Mar. 28, 1983), *vacated on other grnds,* 755 F.2d 1410 (11th Cir.1985).

Plaintiffs fare no better on their fallback *Printz* argument, that the regulations put CLEOs "in the position of taking the blame for [the program's] burdensomeness and for its defects." 521 U.S. at 930, 117 S.Ct. 2365. Not every federal program that presents states or localities a difficult choice with political ramifications violates the Tenth Amendment. *See State of Okl. ex rel. Oklahoma Dept. of Public Safety v. United States,* 161 F.3d 1266, 1269 (10th Cir.1998) (Federal Driver's Privacy Protection Act does not violate the Tenth Amendment simply because it forces states to make a choice between releasing motor vehicle records in conformity with the Act and halting the release of such records); *Minnesota ex rel. Hatch v. U.S.,* 102 F.Supp.2d 1115, 1121 (D.Minn.2000) ("Tenth Amendment's anticommandeering principle prohibits only direct federal compulsion."); *City of New York v. United States,* 971 F.Supp. 789, 793 (S.D.N.Y. 1997) (rejecting plaintiffs' argument that the Tenth Amendment was violated because the statute resulted in political cost to city officials), *aff'd,* 179 F.3d 29 (2d Cir.1999). "Congress has not compelled state regulation where 'any burden caused by a State's refusal to regulate will fall on [individuals], rather than on the State as sovereign.'" *Fraternal Order of Police v. United States,* 981 F.Supp. 1, 6 (D.D.C. 1997), *citing New York v. United States,* 505 U.S. 144, 174, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), *aff'd,* 173 F.3d 898 (D.C.Cir.1999). Because CLEO participation in the certification process is optional, and because the burden of a CLEO's refusal to certify an application falls exclusively on the individual applicant, these regulations do not violate the Tenth Amendment.

*Duty to collect taxes*

■ Count III alleges that the certification regulations interfere with the duty of

the Secretary to collect taxes, in violation of 26 U.S.C. § 6301, which simply provides that "the Secretary shall collect the taxes imposed by the Internal Revenue Laws." Here the argument is that the Secretary has failed in his statutory duty to collect taxes because he has delegated veto power to the CLEOs. This is a frivolous argument. It is not the Secretary's job to maximize gun transfer tax revenues. His duty to collect a transfer tax arises only after an application is approved and a transfer effected. 26 U.S.C. § 5811(a) ("There shall be levied, collected, and paid on firearms transferred a tax . . . for each firearm transferred.").

*Arbitrary, capricious, and an abuse of discretion*

In Count IV, plaintiffs allege both that the Secretary lacked authority to issue the regulations and that the regulations are arbitrary and capricious. The sources of the Secretary's authority are 26 U.S.C. §§ 5812(a) and 5822, which provide, *inter alia,* that the manufacturer or transferor of a covered firearm must be identified "in the application form in such manner as the Secretary may by regulations prescribe" and that "[a]pplications shall be denied if the [manufacture,] transfer, receipt, or possession of the firearm would place the transferee in violation of law"; and 26

U.S.C. § 7805(a), which gives the Secretary authority "to prescribe all needful rules and regulations" for the enforcement of the NFA. Plaintiffs argue that these statutes authorize the Secretary to deny an application only if "transfer, receipt, or possession of the firearm" would place the transferee in violation of the law, and not because an applicant lacks a CLEO certificate. Because Congress has not clearly spoken to this precise question, we must consider whether the agency's interpretation "is reasonable in light of the structure and purpose of the statute." *George E. Warren Corp. v. EPA,* 159 F.3d 616, 622 (D.C.Cir.1998).[2]

In evaluating the reasonableness of these regulations, "[o]ur role, of course, is to determine neither whether [the agency's] approach was 'ideal,' nor whether it was the 'most appropriate,' but only whether it was reasonable." *Allied Local and Reg'l Mfrs. v. EPA,* 215 F.3d 61, 73 (D.C.Cir.2000). Since the enactment of the National Firearms Act in 1934, the Secretary has relied upon certification from local law enforcement sources[3] in evaluating applications for these firearms "deemed particularly inimical to public safety." *Steele,* 755 F.2d at 1412. As the defendants point out, "State and local officers are in a better position to evaluate the nuances of state and local law regarding

---

**2.** *Chevron U.S.A. v. National Resources Def. Council,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and its progeny require this analysis and render less important the indications Congress may have given as to its "intent." Plaintiffs are clearly wrong, in any event, when they point to the 1968 amendments to the National Firearms Act as evidence that Congress rejected the certification requirement. The fact that Congress decided, after debate, not to incorporate the certification requirement directly into the statute suggests, not rejection, but rather acquiescence in the status quo. *Cf. Chemehuevi Tribe of Indians v. Federal Power Commission,* 420 U.S. 395, 410, 95 S.Ct. 1066, 43 L.Ed.2d

279 (1975) ("The deference due this longstanding administrative construction is enhanced by the fact that Congress gave no indication of its dissatisfaction with the agency's interpretation of the scope of its licensing jurisdiction when it amended the Act in 1930.").

**3.** Section 4 of the 1934 Act required an applicant to submit an application "supported by a certification of the local chief of police, sheriff of the county United States attorney, United States marshal, or such other person." Treasury Regulation No. 88, Art. 65 (1934).

possession or ownership of firearms, any recent legislative enactments, as well as the possible threat that an individual may misuse the firearm." Defs.' Mem. Supp. Mot. Dismiss at 41. Given the need for information from both federal and local sources, and the long history of reliance on local certification as the means by which to get this information, I cannot say that these regulations are unreasonable. If they are not unreasonable, then, under *Chevron*, they are not "contrary to law." They are certainly not arbitrary, capricious, or an abuse of discretion.

An appropriate order accompanies this memorandum.

## ORDER

Upon consideration of Defendants' motion to dismiss and after hearing oral argument, it is this —— day of February, 2001, for the reasons set forth in the accompanying memorandum,

**ORDERED** that Defendants' motion to dismiss [# 11] **is granted.**