Kent A. LOMONT, et al., Appellants,

v.

Paul H. O'NEILL, Secretary, United States Department of the Treasury, and Bradley A. Buckles, Director, Bureau of Alcohol, Tobacco and Firearms, Appellees.

No. 01–5104.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 19, 2002.

Decided April 2, 2002.

Stephen P. Halbrook argued the cause for appellants. With him on the briefs was James H. Jeffries, III.

Michael S. Raab, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were Roscoe C. Howard, Jr., U.S. Attorney, and Mark B. Stern, Attorney, U.S. Department of Justice.

Before: EDWARDS, HENDERSON, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Regulations of the Department of the Treasury, implementing the National Firearms Act of 1934, govern the manufacture, possession and transfer of certain types of firearms. The issues in this appeal center on the regulatory requirement that those seeking permission from the Treasury Department to make or transfer these firearms must obtain a certification from a law enforcement official in the jurisdiction of their residence. There are nine plaintiffs. Five are individuals who claim that although they are eligible for a certification, they are unable to obtain one; two are persons whose ability to sell or transfer these firearms allegedly has been impaired by the inability of prospective purchasers to obtain certifications; two are local chief law enforcement officers.

The emergence of organized crime as a major national problem led to the enactment of the National Firearms Act of 1934. *See* David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective,* 17 CUMB. L.REV. 585, 590 (1987). Representing the first major federal attempt to regulate firearms, the Act concentrated on particularly dangerous weapons and devices such as machine guns, sawedoff shotguns and silencers. *See United States v. Kenney,* 91 F.3d 884, 890 (7th Cir.1996); *Sonzinsky v. United States,* 300 U.S. 506, 511–12, 57 S.Ct. 554, 554–555, 81 L.Ed. 772 (1937); Hardy, 17 CUMB. L.REV. at 592–93. (When we speak of firearms in this opinion we mean to include only those currently covered by the Act.)[1] The Act required the maintenance of a registry of firearms containing,

---

1. The Act defines the term "firearm" as follows:

   The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

   26 U.S.C. § 5845(a).

among other things, the name and address of the person possessing the weapon, *see* National Firearms Act, ch. 757, § 5(a), 48 Stat. 1236, 1238 (1934); it required persons seeking the transfer of firearms to file an application with the Commissioner of Internal Revenue, *see id.* at § 4; and it imposed a tax on firearm manufacturers, dealers and importers, as well as on the transfer of firearms. *Id.* at §§ 2, 3.

Under the Treasury Department's 1934 regulations, anyone seeking permission to transfer a firearm had to support his application with a "certificate of the local chief of police, sheriff of the county, United States attorney, United States marshal, or other such person whose certificate may in a particular case be acceptable to the Commissioner [of the Internal Revenue], that he is satisfied that the fingerprints and photograph appearing on the application are those of the applicant and that the firearm is intended by the applicant for lawful purposes." U.S. Treasury Department, Bureau of Internal Revenue, Regulations 88 Relating to Taxes on Certain Firearms and Machine Guns Under the National Firearms Act, Chap. 4, Art. 65 (1934).[2] For reasons described by Justice Jackson, *see* ROBERT H. JACKSON, THE STRUGGLE FOR JUDICIAL SUPREMACY 87–91 (1941), Congress passed the Federal Register Act in 1935. *See* Federal Register Act, ch. 417, 49 Stat. 500 (1935). Treasury's regulations dealing with the transfer of firearms first appeared in the Code of Federal Regulations in 1938. *See* 26 C.F.R. § 307.65 (1938). The regulations remained with minor changes until 1985, when the Bureau of Alcohol, Tobacco and Firearms ("ATF")—to which the Secretary had delegated his authority under 26 U.S.C. §§ 5812 and 5822—deleted the certification authority of United States Attor-

neys and United States Marshals because this "required them to perform services outside their normal operations." *See* 50 Fed.Reg. 41,680–81 (Oct. 15, 1985). According to the government, a benefit of giving state and local officials (rather than federal officials) certification powers is that local officials "are in a better position to know about the particular status of an individual who seeks to make or receive" a firearm and whether that transfer would be consistent with state and local law. Brief for Appellees at 12.

Today applicants to make or transfer firearms can obtain a certification only from "the local chief of police, sheriff of the county, head of the State police, State or local district attorney or prosecutor, or such other person whose certificate may in a particular case be acceptable to the Director" of ATF. *See* 27 C.F.R. § 179.63; 27 C.F.R. § 179.85. As in 1934, the application form must contain a photograph of the applicant and two completed cards of his fingerprints. *Id.* The officer making the certification must state that he is satisfied that the photograph and fingerprints are those of the applicant and that he has "no information indicating that possession of the firearm by the [applicant] would be in violation of State or local law or that the [applicant] will use the firearm for other than lawful purposes." *Id.* The tax, payable to the Treasury by the transferor or, in the case of a manufacturer, by the maker of the weapon, is currently set at $200 per firearm—with the exception of firearms classified as "any other weapon" under § 5845(e), which are taxed at $5 per transfer. *See* 26 U.S.C. §§ 5811, 5821.

The complaint was in four counts, each of which the district court dismissed for failure to state a claim upon which relief could be granted. *Lomont v. Summers,*

---

**2.** The original regulation applied only to the transfer of firearms. Today Treasury's regu-

lations cover both the making and transfer of firearms. *See* 27 C.F.R. §§ 179.63, 179.85.

135 F.Supp.2d 23 (D.D.C.2001). The court rejected plaintiffs' claim that the certification requirement violated the taxpayer privacy provision of 26 U.S.C. § 6103; the court reasoned that applicants (not federal officials) are disclosing return information to state officials. *Id.* at 25–26. Plaintiffs' Tenth Amendment claim failed because state and local officials participate voluntarily in providing certifications. *Id.* at 26. The regulations did not impinge upon the Secretary's duty to collect taxes: the Secretary's "duty to collect a transfer tax arises only after an application is approved and a transfer effected." *Id.* at 27. On the fourth count, the court sustained the Secretary's authority to issue the regulations under 26 U.S.C. §§ 5812(a), 5822 and 7805(a), and held that regulations were not arbitrary and capricious. *Id.* at 27–28.

## I.

■ We will address first the contention that the certification regulations violate the Tenth Amendment "by commandeering State and local officers to administer federal law but without making them accountable to anyone." Brief for Appellants at 35. Two of the plaintiffs, if not any of the others, have standing to raise this claim.[3] Plaintiff Dennis McClure is the sheriff of Orange County, Vermont,[4] and plaintiff Stephen L. Hose is the Chief of the Clinton, Indiana Police Department. *Fraternal Order of Police v. United States,* 173 F.3d 898, 904–05 (D.C.Cir.1999), held that because the Fraternal Order of Police had members who were chief law enforcement officers, the organization had Article III standing to bring a Tenth Amendment challenge to amendments to the Gun Control Act. This much may follow from *Printz v. United States,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), in which the Court reached the merits of a Tenth Amendment challenge to the Brady Act in cases brought by county sheriffs. Neither the majority opinion nor the opinions of the five Justices who wrote separately questioned the sheriffs' standing to sue. The government believes that "chief law enforcement officers have standing only if they are authorized by state law to act on behalf of the State." Brief for Appellees at 34 n.9. But as the government recognizes, to impose that prerequisite would be to depart from our decision

---

3. Whether the private plaintiffs have standing—an issue we do not reach—is uncertain. *Steward Machine Co. v. Davis,* 301 U.S. 548, 585–90, 57 S.Ct. 883, 890–92, 81 L.Ed. 1279 (1937), decided the company's Tenth Amendment challenge to the Social Security Act without considering whether the company had standing to raise the claim. On the other hand, *Tennessee Elec. Power Co. v. Tennessee Valley Auth.,* 306 U.S. 118, 144, 59 S.Ct. 366, 372–73, 83 L.Ed. 543 (1939), held that the TVA had "no standing in this suit to raise any question" under the Tenth Amendment. *See generally* Ara B. Gershengorn, Note: *Private Party Standing to Raise Tenth Amendment Commandeering Challenges,* 100 COLUM. L.REV. 1065, 1075 (2000). The Seventh Circuit held in *Gillespie v. City of Indianapolis,* 185 F.3d 693, 700–02 (7th Cir.1999), that later Supreme Court decisions have undercut *Tennessee Elec. Power Co.,* so that today Article III does not pose an absolute bar to private par-

ties bringing such claims. *But see Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). The Seventh Circuit cited appellate and district court cases on both sides of the issue. 185 F.3d at 700 n. 3.

4. When this action was commenced, Samuel Frank was the sheriff of Orange County, Vermont. Sheriff McClure has since replaced Sheriff Frank. Plaintiffs filed a Notice of Substitution of Party with the district court, which the district court granted.

in the *FOP* case, and perhaps the Supreme Court's disposition of *Printz*.

■ On the merits, we agree with the district court that plaintiffs' Tenth Amendment claim fails. Unlike the Brady Act, the certification regulations do not "command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Printz v. United States*, 521 U.S. at 935, 117 S.Ct. at 2384. Local and state officials have the option of participating or not. *See* 53 Fed.Reg. 10,480, 10,488 (Mar. 31, 1988). There is no federal carrot to encourage participation, and no federal stick to discourage nonparticipation. *Printz* did not hold that the federal government is forbidden from setting up regulatory programs, such as this one, in which state or local governments may voluntarily decide to assist in administering federal laws. *See Printz*, 521 U.S. at 936, 117 S.Ct. at 2385 (O'Connor, J., concurring); *United States v. Nathan*, 202 F.3d 230, 233 (4th Cir.2000).

Chief of Police Hose alleges that citizens of his jurisdiction have the impression that his refusal to participate in the certification program "is injurious to such citizens." Complaint ¶ 23(E).[5] Plaintiffs spell this out in their brief: local and state officers who do not join in the program "offend constituents who thereby cannot get their applications approved" and face pressure to issue certifications. Brief for Appellants at 38. We will assume the allegation to be true, although one wonders how large a constituency is involved in transferring or making machine guns, silencers, sawed-off shotguns and the like. In any event, we cannot see how this affects the analysis of the Tenth Amendment question. The pressure, whatever it is, comes not from the federal government but from the frustration of those unable to obtain certifications to transfer and receive or to make firearms. State officers may experience pressure from citizens if they do not (or perhaps if they do) participate in many federal programs, such as state implementation plans to enforce federal environmental laws. Yet the principle of the Tenth Amendment articulated in *Printz* is that the federal government may not direct, compel or commandeer state officials, *see Minnesota v. United States*, 102 F.Supp.2d 1115, 1121 (D.Minn.2000), except perhaps when the federal law is one of general applicability. *See Printz*, 521 U.S. at 932, 117 S.Ct. at 2383. No such direction or compulsion can be attributed to the federal government here. The certification regulations contemplate voluntary participation on the part of state and local officials. Nothing in *Printz* forbids cooperation between state and federal governments. *See Nathan*, 202 F.3d at 233.

## II.

■ We turn next to plaintiffs' contention that the certification regulations violate the taxpayer privacy provision. "Amended in 1976 in the wake of Watergate and White House efforts to harass those on its 'enemies list,' [26 U.S.C. § 6103] now restricts government officers and employees from revealing 'any return' or 'return information.'" *Tax Analysts v. IRS*, 117 F.3d 607, 611 (D.C.Cir.1997). The gist of the argument is that the ATF application forms to make firearms, which require applicants to disclose to local officials personal information such as their identity, address and the $200 tax, run afoul of this provision in the Internal Revenue Code.

---

**5.** Sheriff Frank, who has been replaced as a party by Sheriff McClure, joined Chief of Police Hose in making these allegations in the complaint.

Apart from the other plaintiffs, Daniel J. Whelan—an employee of a licensed firearms dealer—has standing to bring this claim. He alleges that he cannot obtain ATF's permission to make a firearm because he refuses to reveal "return information" to local or state officials, which he must do in order to obtain a certification.

Whelan, like anyone else who seeks to make a firearm, must include with his application a check or money order made out to the Treasury Department for $200, representing what ATF calls a "making tax."[6] 26 U.S.C. § 5821(b). The completed form, at least once it is filed with ATF, constitutes a "return" and it contains what qualifies as "return information." The term "return" means any "tax or information return ... which is filed with the Secretary," 26 U.S.C. § 6103(b)(1). An element of "return information" is that it be "received by, recorded by, prepared by, furnished to, or collected by the Secretary." 26 U.S.C. § 6103(b)(2). Yet here state and local officers obtain the information from the person seeking to make a firearm before the "return" is filed with the Secretary. Thus, no employee of the federal government is disclosing a "return" or "return information" "received by, recorded by, prepared by, furnished to, or collected by the Secretary" in violation of § 6103(b)(2). *Cf. Stokwitz v. United States*, 831 F.2d 893, 894 (9th Cir.1987).

## III.

Count IV of the complaint[7] charged that the certification regulations are arbitrary and capricious under the Administrative Procedure Act and are otherwise unlawful.[8] The regulations are unlawful,

---

6. Application forms for "transfers" are different than applications to "make" a firearm. Transfer applications require the transferor (*i.e.*, the person seeking to transfer the firearm to another person) to fill out the application and to pay the tax. *See* 26 U.S.C. § 5811(b) (providing that the transfer tax shall be paid by the transferor). The transferee (*i.e.*, the person seeking to receive the firearm) must supply a photograph and other information. But in the end it is the transferor who actually pays the tax and files the form. Because only the transferor (and not the transferee) could attempt to claim the form as his tax return, Treasury instructions state that any information about the status of a transfer application may be given only to the transferor—not to the transferee. We need not concern ourselves with whether the "transfer" form violates § 6103 because we are not presented with any such claim. Rather, the sole issue before us is whether the "maker" form violates § 6103.

7. Count III alleged that the regulations interfered with the Secretary's duty to collect federal taxes, *see* 26 U.S.C. § 6301, because the regulation allows state and local officials to "veto" the collection of taxes on firearms by refusing to issue certifications. *See* Brief for Appellants at 21–22. The district court rightly dismissed the claim as "frivolous." *See*

*Lomont*, 135 F.Supp.2d at 27. It is doubtful whether § 6301, which provides that the Secretary "shall collect the taxes imposed by the internal revenue laws," confers upon plaintiffs any judicially enforceable rights to challenge the Secretary's alleged failure to collect taxes. Even if it did, the Secretary's duty to collect a tax arises only after an application is approved and a firearm is transferred or made. *See* 26 U.S.C. § 5811(a) ("There shall be levied, collected, and paid on firearms transferred a tax ... for each firearm transferred."); *see also* 26 U.S.C. § 5821(a) ("There shall be levied, collected, and paid upon the making of a firearm a tax ... for each firearm made.").

8. We do not reach the claim that the certification regulations are unlawful because "the Secretary has insulated from APA review his own actions which are subject to APA review" by assigning his duties to local officials, who are not covered by the APA. Brief for Appellants at 24–26. Plaintiffs did not mention the claim in their complaint and they presented no arguments about it to the district court. *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Dist. of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C.Cir.1984); *cf. Yee v. Escondido*, 503 U.S. 519, 533, 112 S.Ct. 1522, 1531, 118 L.Ed.2d 153 (1992).

plaintiffs argue, because the Secretary lacked rulemaking authority to issue them. The government responds by pointing to 26 U.S.C. §§ 5812(a), 5822 and 7805(a). These provisions, according to the government, delegate broad authority to the Secretary to promulgate regulations governing applications under the National Firearms Act, a contention with which the district court agreed.

■■■ One of the provisions—§ 7805—gives the Secretary authority "to prescribe all needful rules and regulations for the enforcement of this title." 26 U.S.C. § 7805(a). This is nothing more than a general grant of interpretative rulemaking power, and therefore cannot support the certification regulations. *See* Stanley S. Surrey, *The Scope and Effect of Treasury Regulations under Income, Estate and Gift Taxes*, 88 U. PA. L.REV. 556, 557–58 (1940) (concluding that regulations issued under Treasury's general rulemaking grant are merely interpretative and "do not possess the vital current of legislative power"); Ellsworth C. Alvord, *Treasury Regulations and the Wilshire Oil Case*, 40 COLUM. L.REV. 252, 257 (1940) (stating that specific rulemaking grants given to the Commissioner of Internal Revenue authorize legislative rulemaking but that the general rulemaking grant authorizes only interpretative rules to assist in the execution of the statute); Michael Asimow, *Public Participation in the Adoption of Temporary Tax Regulations*, 44 TAX LAW. 343, 357 (1991) ("[T]ax authorities almost uniformly assume that regulations adopted pursuant to the Treasury's general rulemaking power in section 7805(a) of the Code are interpretive and that rules adopted pursuant to specific grants of rulemaking authority are legislative."). The two other provisions—26 U.S.C. §§ 5812 and 5822—are of a different sort. Section 5812, which deals with transferring firearms, gives the Secretary broad authority to promulgate regulations governing application forms, including regulations pertaining to the identification of the transferee, the transferor and the firearm. *See* 26 U.S.C. § 5812(a).[9] Similarly, § 5822 gives the Secretary broad authority over the form of applications for permission to make firearms. *See* 26 U.S.C. § 5822.[10]

9. The full text is as follows:

A firearm shall not be transferred unless (1) the transferor of the firearm has filed with the Secretary a written application, in duplicate, for the transfer and registration of the firearm to the transferee on the application form prescribed by the Secretary; (2) any tax payable on the transfer is paid as evidenced by the proper stamp affixed to the original application form; (3) the transferee is identified in the application form in such manner *as the Secretary may by regulations prescribe*, except that, if such person is an individual, the identification must include his fingerprints and his photograph; (4) the transferor of the firearm is identified in the application form in such manner *as the Secretary may by regulations prescribe*; (5) the firearm is identified in the application form in such manner *as the Secretary may by regulations prescribe*; and (6) the application form shows that the Secretary has approved the transfer and the registration of the firearm to the transferee. Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law. 26 U.S.C. § 5812(a) (emphasis added).

10. The full text is as follows:

No person shall make a firearm unless he has (a) filed with the Secretary a written application, in duplicate, to make and register the firearm on the form prescribed by the Secretary; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made in the application form in such manner *as the Secretary may by regulations prescribe*; (d) identified himself in the application form in such manner *as the Secretary may by regulations prescribe*, except that, if such person is an individual, the identification must include his fingerprints and his

Both sections provide that applications "shall be denied" if the transfer, receipt, making, or possession of the firearm would place the transferee or person making the firearm in violation of law, *see* 26 U.S.C. §§ 5812(a), 5822, but neither restricts the Secretary's broad power to grant or deny applications in any other respect. The certification regulations thus fall well within the Secretary's statutory authority.

As to the Administrative Procedure Act, plaintiffs complain that the regulations allow local and state officials to act arbitrarily in deciding whether to execute certifications. But this is not enough to render the regulations invalid on their face. "General rules need not work perfectly in all their applications," *Illinois Commerce Comm'n v. Interstate Commerce Comm'n*, 776 F.2d 355, 359 (D.C.Cir.1985). According to the complaint, there are some 30,000 state and local officials who potentially may issue certifications. Plaintiffs allege that two of these 30,000—one in Arlington, Virginia, the other in Anchorage, Alaska—arbitrarily refused their certification requests: the Arlington chief of police required them to submit to a search of their home, or as they put it, to waive their Fourth Amendment rights; the Anchorage chief of police would execute certifications only for friends. Even if these allegations are true, settled precedent in the Supreme Court and in this court holds that a regulation is not itself "arbitrary and capricious" merely because it might be applied in an arbitrary fashion by those implementing it. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 632 n. 10, 109 S.Ct. 1402, 1421 n. 10, 103 L.Ed.2d 639 (1989); *American Hosp. Ass'n v. NLRB*,

499 U.S. 606, 619, 111 S.Ct. 1539, 1547, 113 L.Ed.2d 675 (1991); *Illinois Commerce Comm'n*, 776 F.2d at 359. If the law were otherwise hardly any regulation could be sustained. Most rules and, for that matter, most statutes are susceptible to capricious administration. So long as there is some discretion, there is room for abuse. Bad faith, malfeasance, and outright dishonesty are regrettably always a possibility. The regulations say only that the local official must certify that he is satisfied that the photograph and the fingerprints are those of the transferee or maker, and that the official has no information that possession of the firearm by such person would place him in violation of law or that he will use the firearm for unlawful purposes. On the face of the regulations, there is nothing irrational or unreasonable about this condition. Indeed it appears eminently reasonable to insure that the person wanting to possess a machine gun is who he says he is and that there is no indication he will break the law. If local officials add conditions—in Anchorage, you must be a friend of the chief of police, or in Arlington, you must submit to a search of your home—they are doing so on their own authority, not because the regulations confer this power on them.

We therefore sustain the certification regulations as against plaintiffs' facial attack. We have not decided whether, in a particular application, the regulations would be arbitrary and capricious—for instance, when every qualified local and state official has decided not to issue certifications for anyone within their jurisdiction,[11] or when unlawful conditions are at-

---

photograph; and (e) obtained the approval of the Secretary to make and register the firearm and the application form shows such approval. Applications shall be denied if the making or possession of the

firearm would place the person making the firearm in violation of law.
26 U.S.C. § 5822 (emphasis added).

**11.** One of the plaintiffs, Robert F. Grimes, Jr., may have found himself in that situation. Ac-

tached to the issuance of a certification. *Cf. Amfac Resorts, L.L.C. v. United States Dep't of the Interior*, 282 F.3d 818, 2002 WL 312831 *10 (D.C.Cir. Mar.1, 2002). The complaint alleged only that the regulations were invalid on their face; allegations regarding the specific circumstances of several plaintiffs were meant to show as much. The district court construed the complaint as raising only a facial challenge and decided the case accordingly, without mentioning any as-applied challenge. *See Lomont*, 135 F.Supp.2d at 27–28. On appeal, plaintiffs' briefs did not contest the district court's construction of their complaint, nor did their briefs ever mention an as-applied claim. As in the district court, plaintiffs argued only that the regulation could not be upheld in any case. *See* Brief for Appellants at 24; Reply Brief for Appellants at 12. In response to questioning by the court at oral argument, plaintiffs' counsel attempted to fit the case within the framework of an as-applied challenge. But the effort came too late. *See Tarpley v. Greene*, 684 F.2d 1, 7 n. 17 (D.C.Cir. 1982).[12]

We therefore express no views on the merits of a complaint, brought by a proper plaintiff, claiming that the certification regulations were arbitrary and capricious as applied to him. We hold only that on their face the regulations must be sustained under the Administrative Procedure Act.

*Affirmed.*

---

cording to the complaint, Grimes "is legally qualified in all respects to own and possess firearms." Complaint ¶ 21(A). In order to have a firearm transferred to him, he sought a certification from the Sheriff of Suffolk County, Virginia, the Commonwealth's Attorney for Suffolk County, the three circuit judges presiding in his judicial district, the Chief of Police of the Suffolk Police Department, the Virginia State Police, and the Attorney General of the Commonwealth of Virginia. *Id.* ¶ 21(C). The complaint alleges that each of these officials refused to execute a certification for Grimes (presumably because they are not participating in the program) and that no other officials within Grimes' jurisdiction are available or willing to execute a certificate. *Id.* Grimes so informed ATF when he sent in his application without a certification, but the agency never responded. *Id.* ¶ 21(D).

12. If plaintiffs had properly made an as-applied claim, we would have expected them to argue that the "safety valve" in the regulations was inadequate. When no local or state official will execute certifications, or when by plaintiffs' lights those officials are imposing unlawful conditions, the regulations still allow individuals to seek the assistance of "such other person whose certificate may in a particular case be acceptable to the Director" of ATF. 27 C.F.R. §§ 179.63, 179.85. Precisely who might qualify as "such other person" is far from certain. ATF has given two examples: "State attorneys general and judges of State courts having authority to conduct jury trials in felony cases." *See* Federal Firearms Regulations Reference Guide, Questions and Answers at M19 (2000). But we do not know whether this short list is exhaustive.